778 So.2d 791 (2000)
Joe L. REED et al.
v.
BOARD OF TRUSTEES FOR ALABAMA STATE UNVERSITY et al.
1981227.
Supreme Court of Alabama.
May 26, 2000.
Rehearing Denied August 18, 2000.
*792 J. Cecil Gardner and Kimberly J. Calametti of Gardner, Middlebrooks, Fleming & Gibbons, Mobile; James A. Anderson of Beers, Anderson, Jackson, Nelson, Hughes & Patty, Montgomery; George L. Beck of Beck & Byrne, P.C., Montgomery; and Robert D. Segall of Copeland, Franco, Screws & Gill, Montgomery, for appellants.
Kenneth L. Thomas and Wendell J. Chambliss of Thomas, Means, Gillis, Devlin, Robinson & Seay, P.C., Montgomery, for appellees.
PER CURIAM.
Dr. Joe L. Reed, Patsy B. Parker, and Toreatha L. Johnson appeal from a judgment removing Parker and Johnson from the Board of Trustees for Alabama State University ("the Board"). We affirm the judgment insofar as it relates to Johnson, but we reverse it insofar as it relates to Parker, and we remand the cause. It appears that the claims originally made against Dr. Reed are moot; therefore, we grant the motion to dismiss the appeal insofar as it relates to him.
This is an appeal from a judgment in a quo warranto action commenced on February 8, 1999, by the Board and the State of Alabama against Parker, Johnson, and others, challenging the right of Parker and Johnson to serve on the Board. The Board based its challenge on Ala.Code 1975, § 16-50-20(a), which provides:
"(a) There is hereby created a board of trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee *793 shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past September 30 following his seventieth birthday."
(Emphasis added.) The Board relies specifically on that provision prohibiting an "employee ... of any public postsecondary education institution" from serving on the Board.
Parker and Johnson concede that they have had "working relationships" with postsecondary institutions coincident with their membership on the Board. In particular, Parker has served on the Board continuously since September 1, 1981. From March 23, 1987, to December 2, 1998, she had a "working relationship" with Southern Union State Community College ("Southern Union"), a "postsecondary education institution." Thus, she no longer has a "working relationship" with Southern Union. Johnson has served on the Board continuously since 1993. From September 26, 1996, until now, she has also worked with Alabama Southern Community College ("Alabama Southern"), a "postsecondary education institution," as a "project quest specialist."
This action was tried without a jury. At trial, Parker and Johnson argued that they have never been "employees" of their respective postsecondary institutions within the meaning of § 16-50-20(a). The trial court disagreed, and found that Parker and Johnson each had served as an "employee" of a postsecondary institution, within the meaning of § 16-50-20(a), during her tenure on the Board. Apparently reasoning that this service disqualified them from any further service on the Board, it ordered them removed. Parker and Johnson appealed. Because the Board's case against Parker and Johnson turns on dissimilar circumstances, we shall address the case against each of those members in separate sections of this opinion.[1]

I. Parker
Preliminarily, there is a question regarding the correct standard of review. Parker argues that the judgment must be reviewed de novo. The Board contends that the ore tenus rule applies. In Parker's case, however, we need notand do notchoose between the two standards, for we conclude that the trial court erred as a matter of law in removing Parker from the Board.[2]
In entering its judgment against Parker, the trial court appears to have adopted one particular argument constructed by the Board. The Board states that argument as follows:
"Parker became ineligible to serve on the Board of Trustees upon the date of acceptance of her employment with Southern Union. However, she has continued to illegally serve on the Board of Trustees since 1987the initial date of her employment.... Her last reappointment was in 1996 for a term to expire in 2008. She was, of course, an employee of Southern Union on the date of that appointment.
"According to [§ 16-50-20(a) ], the ineligibility exists because of and at the time of the employment. The statute *794 does not contain a remedial provision that allows an individual to violate the statute for twelve (12) years, and then by voluntary termination of the employment relationship with the public postsecondary education institution, cure the ineligibility. In this case, the statutory language is plain and unambiguous.... There is no statutory provision to allow Parker to cure her ineligibility."

Brief of Appellee, at 27-28 (emphasis added). On the basis of this reasoning, the Board regards as entirely irrelevant the fact that Parker has not had an association with Southern Union since December 2, 1998. In other words, it regards the fact that she is now eligible to serve on the Board as of no consequence.
We reject this argument. Parker was qualified to serve on the Board when she began to serve and she is qualified now. In fact, her relationship with Southern Union had terminated two months before this action was commenced.
But, according to the Board, neither the passage of time nor the change of circumstances has affected Parker's ineligibility. On its face, the Board's argument is that Parker, having sometime served on the Board in violation of § 16-50-20(a), may never again serve on the Board. Otherwise stated, Parker will never be able to purge herself of the ineligibility. Indeed, the Board has neither proposed, nor suggested, any remedial scenario.
This is an unreasonable position and one that is not supported by the language of the statute. The Board is correct in noting that the statute does not say how ineligibility may be cured. That silence, however, does not support the Board's position, for the statute also does not say that ineligibility is incurable. But the statute does offer us a significant clue as to the intent of the Legislature in this matter.
The Board's argument may be, although it is not expressly so stated: (1) that Parker was employed by Southern Union in 1996, the date of her last appointment to the Board; (2) that she was ineligible for appointment in 1996 because of her employment, and, therefore, (3) that her ineligibility will follow her until, and unless, she is reappointed at a time when she is not employed by a postsecondary education institution. If this is the Board's argument, the statute offers the following clue.
Section 16-50-20(a) specifically states that employees of postsecondary education institutions are not "eligible to serve on the board." (Emphasis added.) It does not say that such persons are per se ineligible for appointment. In other words, the disability of which the Board complains does not attach to the appointment, but merely follows the Board member's service.
It will not be presumed that the Legislature has employed "meaningless words." Elder v. State, 162 Ala. 41, 45, 50 So. 370, 371 (1909). Instead, "we presume that the Legislature knows the meaning of the words it uses in enacting legislation." Ex parte Jackson, 614 So.2d 405, 407 (Ala. 1993). Had the Legislature intended the result urged by the Board, it might, for example, have said: "No ... employee or student of any public postsecondary education institution ... shall be appointed to the board." It did not do so, and this Court is not at liberty to rewrite the statute.
In short, the Board has cited no authority for the position it urges, and we know of none. Such a disability may be cured through the severance of the disability-creating employment.[3] Consequently, we conclude that Parker's ineligibility to serve on the Board ceased on December 2, 1998, with the termination of her relationship with Southern Union. The trial court erred in removing her from the Board. As it relates to Parker, therefore, the judgment is reversed and this cause is remanded.

*795 II. Johnson

Unlike the Board's case against Parker, its case against Johnson compels us to determine the proper standard of review. "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses." Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to "disputed issues of fact," whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
"[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence."
Raidt v. Crane, 342 So.2d 358, 360 (Ala. 1977).
Johnson insists that this Court must review the judgment de novo, because, she contends, the evidence was undisputed. We disagree with that contention. The ultimate factual issue, namely, whether Johnson was an "employee" of Alabama Southern, was in dispute.
"Proof of a master and servant relationship is tested by the degree of control the alleged [employer] retains over the alleged [employee]." Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635, 639 (Ala.1992). "Where the alleged master retains merely the right to inspect the work as it progresses, in order to ascertain if it is completed according to plans or specifications, and the right to stop work improperly done, the master and servant relationship is not created." 594 So.2d at 639 (emphasis added). "How the parties characterize the relationship is of no consequence; it is the facts of the relationship that control." Martin v. Goodies Distrib., 695 So.2d 1175, 1177 (Ala.1997) (emphasis added). The burden of proving the existence of an employment relationship rests on the party asserting the relationship. Danford v. Arnold, 582 So.2d 545, 547 (Ala.1991); Federal Land Bank of New Orleans v. Jones, 456 So.2d 1, 10 (Ala. 1984); Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1973).
Moreover, "[t]his Court has, for many years, followed the rule stated in Birmingham Post Company v. Sturgeon, 227 Ala. 162, 149 So. 74 (1933)." Burbic Contracting Co. v. Willis, 386 So.2d 419, 421 (Ala. 1980). In Sturgeon, this Court stated:
"`It is not possible to lay down a hard and fast rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employee or independent contractor. Each case must depend on its own facts. Ordinarily, no one feature of the relation is determinative, but all must be considered together.'"
227 Ala. at 165, 149 So. at 76 (emphasis added).
In this connection, the Board presented a document purporting to be the agreement under which Johnson was employed. It was styled:

"Letter of Appointment "Temporary/Part-Time Employee "Alabama Southern Community College"
The letter stated in pertinent part:
"The purpose of this letter is to offer you an appointment with Alabama Southern Community College as Project Quest Specialist at a rate of compensation equivalent to a full-time annual salary of $12,500.00 beginning effective September 1, 1996. This rate of compensation is based on a local salary schedule. Any compensation paid to you under this appointment shall be *796 subject to withholding for (1) State and Federal income tax, (2) FICA contributions, (3) Alabama Teachers Retirement System contribution, and (4) such other deductions as you may properly designate.
"Pursuant to State law and the policies, rules, and regulations of the State of Alabama Board of Education, your employment in the above position shall be probationary and shall be `at will' to be continued or discontinued, with or without cause, at the discretion of the President of the College. In the event the President shall decide to discontinue your employment, you will receive written notice of such no later than fifteen (15) days prior to the effective date of the discontinuation of employment.
"You may accept this offer by signing your name in the space indicated below and returning this letter to my office within five days of your receipt of this letter. (Please also keep a copy for your records.) Should you accept this appointment, you will have a duty to take all reasonable action necessary to keep yourself fully aware at all times of, and fully abide by, all applicable rules, regulations, and procedures of the College and the State Board of Education, regardless of whether such rules, regulations, and procedures are recorded in an employee handbook or other college publication, stated in other written form, or stated orally to employees in general or to you in particular [emphasis added].
"Should you accept the above-referenced appointment, your job duties and responsibilities will be those described in your job description and made a part hereof [emphasis added].
"Congratulations upon your selection for this appointment. I am hopeful that you will find your employment here to be a rewarding experience.
"Primary location (for travel purposes): Thomasville

"Immediate Supervisor [emphasis added]: John White
"Dean: Ann Clanton"
(Emphasis in original except where noted.) This letter was signed by Johnson and was dated September 26, 1996. The Board contends that the "president of Alabama Southern reserved the right of control over Johnson," which, it argues, is "unambiguously expressed in the Letter of Appointment." Brief of Appellees, at 20.
The record also contains copies of Johnson's "W-2 Wage and Tax Statement" forms for 1997-98. According to these forms, she was paid $12,578.75 in 1997 and $13,200.39 in 1998.
Regarding the services Johnson performed for Alabama Southern, she testified as follows:
"Q. [By counsel for the Board] Now, Ms. Johnson, what do you do at Alabama Southern Community College for which you receive the salaries? Well, I would like to call it salary, but I guess it is wages and compensation. If I may, let's start for 1997. What did you do at Alabama Southern to earn $12,578.75?
"A. [By Johnson] I performed services on two high school campuses, what we had one time referred to as disadvantaged students. They are now labeled as at-risk students. These are students that have potential for going into college. I do assistance in college admission procedures, ACT testing, and financial aid.
"Q. For 1998, it shows that you received [approximately] $13,200. What did you do in 1998 to receive that type of compensation?
"A. I performed exactly the same aforementioned services.
"Q. Today is April something 1999. Are you currently performing the same duties, say, from January to April of this year, 1999?

*797 "A. Yes, I do.
"Q. There have been some questions about funding sources for the moneys that you receive and that it might be a part of some federal grant.... Did you hear that testimony?
". . . .
"A. The entire source of my income is from [funds from a federal grant], yes.
"Q. But your paycheck, and can I assume that the only paycheck you ever receive is one that has Alabama Southern on it?
"A. That's correct. Alabama Southern is the fiscal agent for that particular federal grant."
(Reporter's Transcript, at 74-76.)
Johnson further testified that she does not "report to" Alabama Southern or work on the campus, but, instead, goes "directly" from home "to high schools [to] perform a service there." Also, she testified:
"Q. [By her counsel] No one at Alabama Southern controls anything that you do?
"A. [By Johnson] No. No more than I work on a federal program. I am sure there is a program designed [that] they have at that campus, because that is where I work from.
". . . .
"Q. They don't have control over howyou perform it according to the federal expectations?
"A. Yes, I perform according to what is referred to as a program design."
(Reporter's Transcript, at 79-82.)
In short, the record is replete with oral testimony, including the testimony of Donald Kelly, director of information services for the Department of Postsecondary Education, as well as documentary evidence, on this disputed issue. The weight to be accorded such testimony was a matter for the trial court. Thus, that court's factual conclusions are subject to the presumptions attendant upon the ore tenus standard of review. Under this evidence, we hold that the trial court's conclusion that Johnson was an employee of Alabama Southern was not "clearly erroneous and against the great weight of the evidence." Raidt v. Crane, 342 So.2d 358, 360 (Ala. 1977).
Johnson insists that, even if the trial court correctly held her to be ineligible to occupy her position on the Board, it erred in removing her forthwith. This is so, because, she contends, she should be able to cure her disability by voluntarily terminating her employment within a reasonable time. For the following reasons, we disagree with that contention.
Superficially, Johnson's contention seems consistent with our holding in Part I of this opinion. However, the Board's case against Johnson differs from that against Parker in one important respect, namely, that Johnson still had a "working relationship" with a postsecondary education institution when the judgment in this case was entered. The dispositive question thus becomes whether the fact that Johnson was still employed by Alabama Southern at the time the trial court entered its judgment necessitates a result different from the one reached in Parker's case. We conclude that it does.
This was a quo warranto action, and, consequently, it is subject to the provisions of Ala.Code 1975, §§ 6-6-590 to -604. In particular, it was subject to § 6-6-600, which provides in pertinent part:
"When a defendant ... against whom such action has been conmmenced[commenced], is adjudged guilty of usurping or intruding into, or unlawfully holding or exercising, any office or franchise or unlawfully practicing any profession, judgment must be entered that such defendant be excluded from the office or franchise or be prohibited from practicing such profession and that the plaintiff recover costs against such defendant."
(Emphasis added.)
Section § 6-6-600 is clear on its face and its application unavoidable: if, at the *798 time a defendant in a quo warranto action is "adjudged guilty of ... unlawfully holding... any office," she is, in fact, ineligible to hold such office, "judgment must be entered," thus vacating the office. The imposition of exclusion attaches at the time the judgment is entered. In other words, such a defendant may not cure her disability by terminatingpostjudgmenther disability-causing employment. Specifically, because Johnson was employed by Alabama Southern at the time she was adjudicated to be ineligible, she cannot now cure her disability by terminating her employment.[4] The trial court properly removed Johnson from the Board. As it relates to Johnson, therefore, the judgment is affirmed.

III. Summary
The motion to dismiss the appeal as to Dr. Reed is granted. As to Johnson, the judgment is affirmed; as to Parker, the judgment is reversed; and the cause is remanded. The Board's objection to the sufficiency of the supersedeas bond filed in this case is overruled.
MOTION TO DISMISS APPEAL AS TO DR. JOE L. REED GRANTED; OBJECTION TO BOND OVERRULED; JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; AND CAUSE REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
SEE, J., concurs in part and concurs in the result in part.
SEE, Justice (concurring in part and concurring in the result in part).
I concur in the result as to Part I, which reverses the judgment as to Parker and remands the cause. I concur in Part II, which affirms that portion of the trial court's judgment removing Johnson from the Board. I concur in the ruling on the motion to dismiss as to Dr. Joe Reed and in the ruling on the Board's objection to the supersedeas bond.
NOTES
[1] The claims against Parker and Johnson are the only claims to be addressed by this appeal.
[2] Questions of law are not subject to the ore tenus standard of review. Walker v. Walker, 695 So.2d 58, 59 (Ala.Civ.App.1997); Plus Int'l, Inc. v. Pace, 689 So.2d 160, 161 (Ala. Civ.App.1996); see also First Mercury Syndicate, Inc. v. Franklin County, 623 So.2d 1075, 1076 (Ala.1993); DeWitt v. Stevens, 598 So.2d 849, 850 (Ala.1992).
[3] This statement is subject to a caveat, which is addressed in Part II of this opinion.
[4] Our holding in this part of the opinion is the caveat to which we referred in note 3. Unlike Johnson, Parker had terminated her employment relationship with the postsecondary education institution before the entry of the judgment in this case; hence the different result as to Parker.