[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 91 
Ronnie Reed was removed from the office of county commissioner of Russell County, district four, by an order of the Russell Circuit Court on April 20, 2006. Reed appeals. We affirm.
 I. Facts
Reed was elected as the commissioner for Russell County, district four; he took office on November 12, 2004. At the time of his election and continuing for more than one year after he assumed office, Reed was a convicted felon.[1] During the fall of 2005 Reed became aware of rumors circulating in the community that his criminal past had been uncovered. Reed then began the process to obtain a pardon in the State of Georgia. In November 2005 the district attorney for Russell County presented documents to the presiding circuit judge of the Russell Circuit Court, Albert Johnson, indicating that Reed had *Page 92 
been convicted of a felony in 1975 and that he had not been pardoned for that conviction.
On December 13, 2005, Judge Johnson issued an order, in accord with Code of Alabama 1975, § 6-6-591 et seq., directing the district attorney for Russell County, Kenneth E. Davis, to file a quo warranto action against Reed (case no. CV-05-492). On December 21, 2005, Reed was pardoned by the State of Georgia for his 1975 felony conviction for burglary. On December 22, 2005, before the district attorney had complied with Judge Johnson's order, a private citizen, Gerald Kite, filed a quo warranto action against Reed. Kite's action was assigned case no. CV-05-513; upon Kite's dismissal as a party, the district attorney, proceeding for the State, was substituted as the plaintiff, the case files in case no. CV-05-513 and case no. CV-05-492 were merged, and case no. CV-05-492 was dismissed. On December 28, 2005, Judge Johnson entered an order recusing himself and all other Russell County circuit judges from hearing the case. On January 6, 2006, Brady E. Mendheim, a district judge in Houston County, was assigned to hear the case against Reed.
On February 13, 2006, relying on Judge Johnson's previous order, Judge Mendheim ordered District Attorney Davis to proceed with a quo warranto action against Reed. The State filed an amended complaint in case no. CV-05-513 and then filed a request for admissions. The State filed a motion for a summary judgment, which was argued before Judge Mendheim on March 31, 2006. On April 20, 2006, the State's motion for a summary judgment was granted, and an order was entered removing Reed from office. Reed appealed.
 II. Standard of Review
A summary judgment is afforded no presumption of correctness on appeal and is subject to a de novo review. "[O]n appeal, a summary judgment carries no presumption of correctness."Hornsby v. Sessions, 703 So.2d 932, 938 (Ala. 1997).
 "`In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before the trial court made out a genuine issue of material fact,' and whether the movant was entitled to a judgment as a matter of law."
Ex parte General Motors Corp., 769 So.2d 903
(Ala. 1999) (quoting Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988)).
 "[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the court's judgment carries no presumption of correctness. . . . Because no material facts are disputed and this appeal focuses on the application of the law to the facts, no presumption of correct[ness] is accorded to the trial court's judgment. Therefore, we review de novo the application of the law to the facts of this case."
Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379
(Ala. 1996) (citations omitted).
 III. Discussion A. Was quo warranto the proper form of action given Reed's pardon?
Reed's first argument on appeal is that quo warranto was an improper form of action in this case because, he says, his pardon in Georgia cured any statutory impediments to his holding elective state office. Alternatively, Reed argues that the proper method to test the right to hold an elective state office is under Alabama's election-contest statute, Ala. Code 1975, § 17-15-1 et seq. *Page 93 
Alabama's quo warranto statute, Ala. Code 1975, § 6-6-591, provides, in pertinent part:
 "(a) An action may be commenced in the name of the state against the party offending in the following cases:
 "(1) When any person usurps, intrudes into or unlawfully holds or exercises any public office, civil or military, any franchise, any profession requiring a license, certificate, or other legal authorization within this state of any office in a corporation created by the authority of this state;
 "(2) When any public officer, civil or military, has done or suffered any act by which, under the law, he forfeits his office;
 ". . .
 "(b) The judge of the circuit court may direct the action to be commenced when he believes that any of the acts specified in subsection (a) of this section can be proved and it is necessary for the public good, or it may be commenced without the direction of such judge on the information of any person giving security for the costs of the action, to be approved by the clerk of the court in which the action is brought.
 "(c) An action under this section must be commenced in the circuit court of the county in which the acts are done or suffered. . . ."
 The foregoing provisions must be read in conjunction with Ala. Code 1975, § 36-2-1(a), which provides, in part:
 "(a) The following persons shall be ineligible to and disqualified from holding office under the authority of this state:
 "(1) Those who are not qualified electors, except as otherwise expressly provided;
 ". . . .
 "(3) Those who shall have been convicted of treason, embezzlement of public funds, malfeasance in office, larceny, bribery or any other crime punishable by imprisonment in the state or federal penitentiary and those who are idiots or insane. . . ."
The plain reading of § 36-2-1(a)(3) is that a person convicted of a crime punishable by imprisonment in the state penitentiary is ineligible to hold state office. In interpreting a predecessor statute to § 36-2-1(a)(3), this Court held that "`ineligible' . . . means inelectable — that is, not capable of being chosen — and hence the qualifications enumerated relate to the date of election, and not merely to the date of actual induction into office. — Finklea v.Farish, 160 Ala. 230, 237, 49 So. 366[, 368 (1909)]."Shepherd v. Sartain, 185 Ala. 439, 446, 64 So. 57, 61
(1913).
In State ex rel. Sokira v. Burr, 580 So.2d 1340
(Ala. 1991), this Court held that a convicted felon who has been pardoned before being elected to and assuming public office was eligible to hold elected office in Alabama. However, that is not the issue presented in this case. In this case Reed had not been pardoned, when elected, of the felony he had been convicted of. Reed remained unpardoned when he assumed office, and under §36-2-1(a)(3) he was ineligible to seek or assume that office.
This finding that Reed was ineligible to seek or to hold office leads to an examination of the quo warranto statute to determine whether that statute provides the proper procedural method by which to remove Reed from office. Section 6-6-591(a)(1) provides that an action may be brought on behalf of the State "[w]hen any person usurps, intrudes into or unlawfully holds or exercises any public office. . . ." *Page 94 
To "usurp" is to seize unlawfully and assume another's position, office, or authority. See, e.g., Black's Law Dictionary 1580 (8th ed.2004). Although Reed argues that the quo warranto statute should be used in "snapshot" fashion, focusing on a particular instant in time when the facts were most favorably disposed toward him, "usurp" clearly indicates that the disqualifying circumstance attaches when it arises and that it is continuing in nature. See, e.g., Shepherd, supra. Reed's usurpation of office occurred when he assumed an office he was ineligible to hold. By assuming that office he usurped the right of a legally qualified candidate to do so. Reed did not reveal his felony conviction and thereby Reed denied the electors of Russell County the right to make a choice from among a slate of legally qualified candidates. Having usurped his office initially, Reed's usurpation continued for the entire one-and-one-half-year term he served before he was removed from office, because during that entire term he deprived someone else who was lawfully entitled to the office at the time of the election from holding it.
Reed argues, however, that when this action was filed he had been pardoned and that he was therefore qualified to continue to hold the office of county commissioner. Reed contends thatReed v. Board of Trustees for Alabama State University,778 So.2d 791 (Ala. 2000), supports his contention that his pardon "cured" his ineligibility to hold office. Reed
involved a dispute relating to the eligibility to hold office of someone appointed by the governor to the Board of Trustees for Alabama State University. The governing statute, §16-50-20(a), provided that "`[n]o member of the governing board or employee or student of any public post-secondary institution . . . shall be eligible to serve on the board [of trustees for Alabama State University].'" Reed, 778 So.2d at 793
(emphasis omitted). Parker, who served on the Board, had during part of her service on the Board been employed at another post-secondary educational institution, but had resigned that position before the challenge to her service on the Board of Trustees for Alabama State was filed. This Court recognized that Parker had "sometime served on the Board in violation of § 16-50-20(a)" but found that her resignation from the other postsecondary institution had cured her disqualification. The Court found that under the specific language of the statute, Parker may have been ineligible to serve while she was employed at the other institution, but she was not ineligible for appointment to the Board. The Court stated that "the disability . . . does not attach to the appointment, but merely follows the Board member's service." 778 So.2d at 794. As we have discussed above, our cases hold that a person disqualified from holding public office pursuant to § 36-2-1(a)(3) is ineligible to seek as well as to hold that office; thus, the disability created by § 36-2-1(a)(3) attaches at the inception of holding that office and cannot, with reference to that term of office, be cured thereafter. Reed did not involve elected public office under § 36-2-1 (a)(3), and it is not controlling here.[2] *Page 95 
It is the settled law of this State that a quo warranto proceeding is the proper remedy to determine whether a party is usurping a public office. See, e.g., Talton v.Dickinson, 261 Ala. 11, 72 So.2d 723 (1954). This Court has also stated that "[i]t is well established that the remedy [of quo warranto] lies to challenge a person's right to hold office based on grounds of ineligibility." State ex rel. James v.Reed, 364 So.2d 303, 305 (Ala. 1978). We find that quo warranto was the proper form of action on the facts of this case.[3]
B. Was the quo warranto action properly prosecuted?
Reed's second argument relates to the method by which the quo warranto action was prosecuted. Reed contends that Judge Johnson's December 13, 2005, directive to the district attorney to bring a quo warranto action against Reed was in error or, alternatively, that it was not binding because of Judge Johnson's subsequent recusal from hearing the action. Section6-6-591(b) provides that the circuit judge "may direct the action to be commenced when he believes that any of the acts specified in subsection (a) of this section can be proved and it is necessary for the public good." This directive is to be given to the district attorney before the action is commenced and may be entered by any circuit judge with jurisdiction. There is no statutory requirement that the circuit judge who has given the directive to take action be the same judge to whom the case is assigned for trial. There is also no statutory authority, and Reed has cited no other authority, for his contention that Judge Johnson's directive to the district attorney was, as a matter of law, made void, or became voidable, as a result of his subsequent recusal. As this Court has previously stated, it is not the duty of an appellate court to perform a party's legal research, Spradlin v. Birmingham Airport Auth.,613 So.2d 347 (Ala. 1993), nor is this Court obligated "to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument." Dykes v. Lane Trucking, Inc., 652 So.2d 248,251 (Ala. 1994).
Reed also contends that Judge Johnson did not make an affirmative finding that the filing of the action was "necessary for the public good." This argument is without merit. The statute provides that the circuit judge may direct commencement of the action when "he believes" the action "necessary for the public good." Judge Johnson, in his order of December 13, 2005, demonstrated familiarity with the facts upon which he based his order directing the district attorney to proceed against Reed. Judge Johnson's order of December 13, 2005, stated, in part, as follows:
 "The Court having been informed that the Russell County District Attorney's office is in possession of certain documents indicating that Russell County Commissioner Ronnie Reed is a convicted felon, and upon examination of those documents, the Court is of the opinion that it can be proven that Ronnie Reed is a convicted felon and unlawfully holding office. Pursuant to Alabama Code Section 6-6-591 et seq. the District Attorney for Russell County is ordered to file an action in the nature of Quo Warranto *Page 96 
against Russell County Commissioner Ronnie Reed."
(Emphasis added.)
There is no requirement in the statute for a specific finding that the filing of an action is necessary for the public good, and the facts as stated in Judge Johnson's order certainly show Judge Johnson's awareness and belief that bringing such an action was necessary for the public good. Moreover, Judge Mendheim, in an order dated February 14, 2006, found that Judge Johnson's order "necessarily implies a judicial determination that the `public good' is at issue. Ala. Code [1975,] §6-6-591(b). The allegation in the present case that a publicoffice is held by a person not entitled to that office clearlyinvolved the `public good.'" (Emphasis added.)
Reed argues that the entry of Judge Johnson's December 13, 2005, order deprived him of his right to confront witnesses against him. Reed argues that he was not able to rebut the finding of probable cause implicit in the order. The determination required of the judge before commencement of a quo warranto action represents a preliminary determination of a factual basis of public necessity for commencing the quo warranto action. Judge Mendheim, in his order removing Reed from office, stated:
 "The clear language of § 6-6-591(b) states that the determination of the `public good' rests with the judge at the initiation of a quo warranto proceeding. It is a preliminary determination by the judge that the case is not a wholly private concern. . . . The `public good' is not an element of the claim for the [State] to prove at trial."
 Judge Mendheim correctly determined that the finding of public good is not part of any element of the offense to be tried. The proof the State was required to produce at trial to remove Reed from office is set forth in Ala. Code 1975, § 6-6-600, which states:
 "When a defendant, whether a natural person or corporation, against whom such action has been commenced, is adjudged guilty of usurping or intruding into, or unlawfully holding or exercising, any office or franchise or unlawfully practicing any profession, judgment must be entered that such defendant be excluded from the office. . . ."
The State was thus required to prove that Reed usurped, intruded into, or unlawfully held a public office. Reed does not contend, and the record does not demonstrate, that he was prevented from presenting a defense as to each element of the State's case as set forth in § 6-6-600.
Reed also argues that the quo warranto action against him was, in fact, a private action. Reed's contention is without merit. The State, at the direction of the trial court, intervened in the private action brought by Kite. Kite was dismissed as a party, and the State then filed an amended complaint. The case proceeded solely as a State action against Reed. Reed had notice of the allegations against him and, as evidenced by the record, mounted a vigorous defense, with the aid of able counsel.
 C. Is Alabama's statutory framework for removing a person from office unconstitutional ?
Reed contends that Alabama's statutory framework for removing a person from public office based on a felony conviction is unconstitutional because, he says, it is disproportionately applied to African-American males. In footnote 7 to his initial brief to this Court Reed states:
 "Reed, an African American male, also argues that Code of Alabama (1975) § 36-2-1 (a)(3) is unconstitutional in that it disproportionately disenfranchises African American males in Alabama. *Page 97 
 In Alabama, 6.4% of the total population are disenfranchised, while 14% of African Americans are disenfranchised, according to www.righttovote.org. Approximately, one third of all African American males of voting age are disenfranchised in Alabama. Chisun Lee, 'Political Prisoners: Minorities Struggle to Break Free of Felon Voting Bans,' The Village Voice (Oct. 12, 2004)."
Reed does not show with particularity how this statistical compilation relates to the facts of this case. Those facts show that Reed was convicted of a felony in the State of Georgia nearly 30 years ago. Reed did not seek a pardon to have the consequences of that conviction removed until he learned that he might be removed from office because of the conviction. Reed does not show that any statute, constitutional provision, or instrumentality of the State of Alabama in any way blocked or prohibited him from seeking a pardon in Georgia at any timebefore he was elected to public office. Reed's ineligibility to hold public office was the result of his own inaction over nearly three decades; it was not the result of any constitutional infirmity arising from the Alabama statute that establishes who is eligible to hold public office in this state.
 IV. Conclusion
Our de novo review of the record supports the judgment of the trial court removing Reed from the office of county commissioner for district four in Russell County. Accordingly, that judgment is affirmed.
AFFIRMED.
SEE, HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Reed was convicted of burglary, a felony, in the State of Georgia, on June 13, 1975. He was sentenced to five years imprisonment but was placed on probation. Reed successfully completed his term of probation.
[2] Reed also cites, as authority for his position, a line of Idaho cases that stand for the general proposition that "quo warranto proceedings refer to the `conditions that exist at the time the action is brought.'" People ex rel. Neilson v.Wilkins, 101 Idaho 394, 396, 614 P.2d 417 (1980). We findNeilson, which involved a residency issue, to be distinguishable from this case, and we therefore decline to adopt its holding. Neilson also seems to be in conflict with the factually similar Alabama case of Seals v. State ex rel.Matthews, 164 Ala. 582, 51 So. 337 (1910). However, were we to adopt Neilson, given our analysis of this case, there would be no basis for relief for Reed because we have determined that his ineligibility is continuing in nature and was a "condition" in existence "at the time the action was brought."
[3] Having determined that quo warranto is a proper form of action to test Reed's eligibility to hold office, we do not reach the issue whether an election contest might also have been an appropriate remedy.