COBB, Chief Justice.
The Alabama State Bar (“the Bar”) appeals the decision of the Board of Disciplinary Appeals of the Alabama State Bar (“the Board”) reversing the order of a panel of the Disciplinary Board of the Alabama State Bar (“the panel”) disbarring Jesse Derrell McBrayer, a member of the *101 Alabama State Bar, and remanding the case for a new hearing before the panel. We reverse and remand.

I. Factual Background and Procedural History

On May 26, 2005, the Bar issued two sets of formal charges against McBrayer. One set of charges arose from allegations that a client in a land-development purchase gave McBrayer $500,000 to be deposited in his trust account. Approximately a month after the funds were deposited, the purchase fell through, and the client asked that the funds be returned to him. McBrayer eventually returned $235,000 to the client, but he kept $265,000. The client contended that McBrayer had converted the funds for personal use; McBrayer, however, contended that the $265,000 was his attorney fee, although there was no written agreement concerning McBrayer’s attorney fee. The client eventually sued McBrayer in federal court, seeking the return of the $265,000, and McBrayer agreed to the entry of a consent judgment. McBrayer had refinanced his house before the consent judgment was entered; however, the mortgage company delayed recording the mortgage, and the client filed the consent judgment before the recording of the mortgage, thus giving the judgment priority. The judgment was eventually paid. The client incurred $70,000 in attorney fees in recouping the $265,000 retained by McBrayer.
The other charges brought against McBrayer by the Bar involved a $100,000 loan another client had made to McBrayer. A promissory note and a guarantee agreement were executed, which stated that McBrayer would take out a home-equity line of credit on his residence and would repay the full amount plus 10 percent interest within 33 days. McBrayer failed to pay the loan on the due date. The client asked McBrayer for payment on numerous occasions; however, each time the client asked to be paid, McBrayer would have an excuse as to why he could not pay and promise to repay the loan within a few days or a few weeks. Seventeen months after the loan was made, McBrayer wrote the client a check in the amount of $14,441.14, which represented interest on the loan. The client attempted to deposit the check in his bank account, but the check was returned for insufficient funds. McBrayer told the client to redeposit the check; instead, the client telephoned the bank on which McBrayer’s check was drawn on numerous occasions, inquiring as to whether McBrayer had sufficient funds in his account to pay the check. Each time the client was told that there were not sufficient funds in McBrayer’s account to pay the check. The client then filed a complaint with the Bar, and the Bar instructed McBrayer to give the client a cashier’s check in the amount of $14,441.14. Instead, McBrayer wrote the client another personal check for $14,441.14. The client deposited the check, and it was also returned for insufficient funds. The client sued McBrayer, attempting to collect on the promissory note, and obtained a default judgment against McBrayer. The client has been unsuccessful in collecting on the default judgment.
On August 22, 2005, the hearing officer for the panel set a hearing for October 12, 2005, regarding the two complaints against McBrayer. On October 5, 2005, McBrayer filed a motion to continue the hearing, claiming that he did not receive timely notice to prepare for the hearing and that “[a] trip concerning business, not law, and involving millions of dollars was scheduled during and beyond the time period of the hearing on October 12, 2005[,] and cannot be changed.” McBrayer’s motion was denied. On October 10, 2005, McBrayer filed *102 a motion to reconsider the denial of his motion to continue; that motion was granted, and the hearing was rescheduled for February 16, 2006.
On February 15, 2006, McBrayer filed another motion to continue the hearing. In his motion, McBrayer alleged that he had only recently found counsel to represent him at the hearing, that counsel required payment of a significant retainer that McBrayer would be unable to pay for 30 days, and that counsel who had agreed to represent him required a continuance. After the motion to continue was filed, the attorney McBrayer had retained, James L. North, telephoned counsel for the Bar and asked for a continuance. Counsel for the Bar agreed to the continuance, and the hearing was continued until May 24, 2006. As the new hearing date approached, counsel for the Bar contacted North and learned that North was no longer representing McBrayer. According to counsel for the Bar, North stated that McBrayer never contacted North after the continuance was granted.
The May 24, 2006, hearing was continued, apparently -due to the hospitalization of the Bar’s counsel. The hearing was rescheduled for December 14, 2006.
On November 27, 2006, McBrayer filed another motion to continue the hearing. In support of his motion, McBrayer argued that he had filed a petition for Chapter 11 bankruptcy on October 30, 2006, and that the bankruptcy court had scheduled a motion hearing in the bankruptcy proceeding for December 14, 2006. The Bar opposed the motion to continue, and the motion was denied. On December 14, 2006, McBrayer filed yet another motion to continue. In his motion, McBrayer alleged that he had had surgery on December 12, 2006, and that he was restricted from driving and was taking Lortab, a pain medication, which, he said, caused him to be unable to think clearly. However, on December 8, 2006, in the intervening period between the denial of the first motion to continue and the filling of the second motion to continue, the hearing officer had continued the hearing due to his own illness.
On February 21, 2007, the hearing officer rescheduled the hearing for June 20, 2007. On June 12, 2007, William J. Baxley filed a motion for a continuance on McBrayer’s behalf. In his motion, Baxley stated that he had recently been retained by McBrayer, that he had a conflict with the June 20, 2007, hearing date because of litigation commitments, and that his representation of McBrayer was contingent upon a continuance being granted. The Bar objected to Baxley’s motion, arguing that McBrayer had made numerous requests for continuances throughout the proceedings and that he had had adequate time in which to secure legal counsel and had failed to do so. On June 14, 2007, the hearing officer denied Baxley’s motion to continue. On June 19, 2007, McBrayer filed another motion to continue as well as a motion to reconsider Baxley’s motion to continue. In both motions McBrayer argued that he had a right to legal counsel at the hearing.
The panel convened on June 20, 2007, and first heard arguments on McBrayer’s motion to reconsider Baxley’s motion and his own motion to continue. McBrayer argued to the panel that his motions were premised on the fact that he did not have legal counsel and that he needed legal counsel to represent him. McBrayer also argued that the delay in obtaining Baxley’s services was due to problems getting funds for the retainer required by Baxley before he would agree to represent McBrayer. During the hearing, McBrayer made the following statements:
*103 “I have trouble hearing. I have hearing loss. Also, I’m a severe diabetic. It’s related to my diabetes as well.
[[Image here]]
“I have my own medical issues I deal with all the time, and they do cause problems. And if I do have a surgery, it’s not like a normal person who has surgery and that — because of the severity of my diabetes.
“And that — I need counsel to help me to — with a sharper mind to know what’s going on as to the matters to be handled.
“I have not practiced essentially in the last two years or so and have no intention of being very active because of my medical problem.”
McBrayer, however, never requested a continuance based on his medical condition. McBrayer’s motion to reconsider and motion to continue were denied, and the hearing took place.
After a hearing on both sets of formal charges, the panel found McBrayer guilty of all charges and determined that he should be disbarred. McBrayer appealed to the Board. On January 25, 2008, the Board entered an opinion reversing the judgment of the panel, finding that the panel should have stopped the June 20, 2007, hearing and transferred McBrayer to disability inactive status because of his medical condition, and remanding the case to the panel for a new hearing or the entry of an order transferring McBrayer to disability inactive status. The Bar appeals.

II. Standard of Revieiv

“[Wjhether [the Board] properly applied the ‘clearly erroneous’ standard of review to [the panel’s] findings of fact is a question of law. Likewise, all other legal conclusions in the final order of [the Board] present questions of law to us. This Court reviews questions of law de novo. National Ins. Ass’n v. Sockwell, 829 So.2d 111 (Ala.2002); Moss v. Williams, 822 So.2d 392 (Ala.2001); and Reed v. Board of Trustees of Alabama State Univ., 778 So.2d 791 (Ala.2000). Such a de novo review results in this Court’s applying the same standard [the Board] applied as to all questions of law, including the application by [the Board] of the ‘clearly erroneous’ standard to [the panel’s] findings of fact.”
Tipler v. Alabama State Bar, 866 So.2d 1126, 1137 (Ala.2003).

III. Analysis

The Bar argues that the panel’s denial of McBrayer’s motion to continue and motion to reconsider Baxley’s motion was not clearly erroneous and that the Board thus erred in reversing the panel’s decision. We agree.
Rule 27(c), Ala. R. Disc. P., states:
“If during the course of a disciplinary proceeding, the respondent contends that he or she is suffering from a disability by reason of mental or physical infirmity, illness, or addiction to drugs or intoxicants, which makes it impossible for the respondent to adequately defend himself or herself, the Disciplinary Board shall enter an order transferring the respondent to disability inactive status until a determination is made of the respondent’s ability to adequately defend himself or herself. The Disciplinary Board shall appoint a lawyer to represent the respondent if he or she is without adequate representation, and may take or direct such action to be taken as it deems necessary or proper to determine whether the respondent is able to adequately defend himself or herself, including the examination of the respondent by such qualified medical experts as the Disciplinary Board shall *104 designate. If the Disciplinary Board determines that the respondent is able to adequately defend himself or herself, it shall take such action as it deems proper and advisable, including a direction for the resumption of the disciplinary proceedings against the respondent.”
In its opinion reversing the decision of the panel, the Board placed great emphasis on the fact that the word “shall” appears in the first sentence of the rule. The Board noted that McBrayer suffers from a hearing loss and severe diabetes. During the hearing McBrayer asked to remain seated because, he said, he suffers from neuropa-thy and has “the shakes sometimes.” The Board also noted that McBrayer stated that he needed the assistance of counsel “with a sharper mind to know what’s going on as to the matters to be handled” and that he “[had] no intention of being very active because of [his] medical problem.”
In emphasizing the term “shall” in the first sentence of Rule 27(c), the Board apparently dismisses the clause “which makes it impossible for the respondent to adequately defend himself.” (Emphasis added.) McBrayer never specifically asked for a continuance based on his medical condition. Instead, he argued primarily that under the Alabama Rules of Disciplinary Procedure he was afforded the right to counsel and his argument was peppered with references to various health issues and concerns. Never did McBrayer argue that his medical condition made it impossible for him to adequately defend himself. In fact, the record reveals that McBrayer did indeed defend himself. In support of its finding that the panel’s disbarment of McBrayer should be reversed, the Board observed that “[t]he case against McBrayer was so one-sided that the panel reached a decision to disbar him in fifteen minutes.” Although this statement is indeed true, it is not apparent from the record that the fact that the panel reached a decision so quickly was due to McBrayer’s medical condition. Instead, it appears that McBrayer did not prepare to defend himself on the mistaken belief that the panel would grant his motion to continue. For example, McBrayer did not bring any witnesses to testify on his behalf, and the documents he needed to support his arguments during the hearing were in a box in the trunk of his automobile.
Rule 19(a), Ala. R. Disc. P., states that “[c]lear and convincing evidence shall be the standard of proof required in all disciplinary proceedings, including petitions for reinstatements and for transfer to disability inactive status.” The record reveals that there was not clear and convincing evidence that McBrayer was suffering from a physical infirmity that made it impossible for him to adequately defend himself. Thus, the decision of the Board that McBrayer should have been placed on disability inactive status instead of disbarred is due to be reversed.
McBrayer argues, and the Board agreed, that he was entitled to representation by counsel and that the hearing should have been continued until his counsel could be present. The Board’s opinion states:
“He had, at the last moment (after he raised the necessary money for a fee) hired a competent lawyer. His retained counsel requested a two month continuance. The continuance was to accommodate a conflict in the retained lawyer’s schedule. We believe in the interest of fairness and to afford full due process protection a continuance should have been granted. The case against McBrayer was so one-sided that the panel reached a decision to disbar him in fifteen minutes. Only one time out of four was the case continued because of *105 McBrayer. In McBrayer’s opening statement, he stated, ‘I need counsel to help me.’ ...
[[Image here]]
“Not only was McBrayer entitled to a lawyer, he was greatly in need of one. The Disciplinary Panel should have issued an order transferring McBrayer to disability inactive status or continued his cause until his lawyer could defend him.”
This Court has previously recognized “that the right to engage in the practice of law in Alabama is a property right that may be denied only if the denial comports with the procedural due process of law guaranteed by the Alabama and United States Constitutions.” Ex parte Case, 925 So.2d 956, 961 (Ala.2005). Procedural due process includes the notice of the charges against the lawyer as well as an opportunity to be heard on those charges. Id. Procedural due process also includes the right to be represented by counsel, if the respondent so chooses. Parducci v. Payne, 360 So.2d 1023 (Ala.Civ.App.1978). The right to representation by counsel, however, is not without limits. In Averi v. Alabama State Board of Podiatry, 567 So.2d 343 (Ala.Civ.App.1990), the respondent appeared at the hearing and requested a continuance, alleging that his attorney had “dropped” him. The hearing officer denied the request, at which time the respondent left the hearing. The complaints against the respondent were heard without the respondent being present, and his license to practice podiatry was revoked. The respondent appealed to the Court of Civil Appeals, arguing that his right to be represented by counsel was violated by the board’s refusal to continue the hearing. The Court of Civil Appeals held:
“We have found no absolute right to a continuance of an administrative hearing unless the refusal of such a continuance would be an abuse of discretion. Evers v. Medical Licensure Commission, 523 So.2d 414 (Ala.Civ.App.1987). Here, the hearing was scheduled for November 19, 1988. The record reveals that [the respondent] had been represented by counsel and that there had been no motion to withdraw filed by [the respondent’s] attorney. In fact, it appears from the record that [the respondent] clearly had representation as late as 5:00 p.m. on the day preceding the hearing. Furthermore, [the respondent] was present at the hearing but chose to leave. In view of the above, we cannot find that the board abused its discretion in denying [the respondent’s] motion for a continuance.”
567 So.2d at 345.
The record reveals that over a 20-month period the hearing regarding the charges against McBrayer was continued on 4 separate occasions. Although only one continuance was granted exclusively at McBrayer’s request, McBrayer requested a continuance for four of the five dates on which the hearing was set. On one of those occasions, McBrayer sought the request because he had secured counsel on the eve of the hearing. The continuance was granted so that counsel could prepare for the hearing, yet McBrayer never contacted the attorney he had retained after the continuance was granted. Furthermore, McBrayer had notice of the June 20, 2007, hearing approximately four months prior to the hearing. Yet, according to the record, he apparently waited until less than two weeks prior to the hearing to secure the assistance of counsel. Approximately 20 months elapsed between the time the charges against McBrayer were filed and the hearing before the panel. Given these circumstances, we cannot conclude that the panel exceeded its discretion *106 in denying McBrayer’s last motion for a continuance.

IV. Conclusion

Because clear and convincing evidence that McBrayer’s medical condition made it impossible for him to adequately defend himself during the panel hearing did not exist, we hold that the Board erred in concluding that the panel should have suspended the healing and immediately placed McBrayer on disability inactive status. Likewise, the record does not reflect that the panel clearly erred in denying McBrayer’s motion for a continuance because he was not represented by counsel. The order of the Board is hereby reversed, and this matter is remanded for proceedings consistent with this opinion.[1]
REVERSED AND REMANDED.
SEE, LYONS, STUART, and PARKER, JJ., concur.
SMITH, J., concurs in the result.
MURDOCK, J., dissents.
WOODALL and BOLIN, JJ., recuse themselves.

. On September 12, 2008, this Court rescinded Rule 5.1, Ala. R. Disc. P., which established the Board of Disciplinary Appeals, effective October 6, 2008. Also on that date, the Court amended Rule 12 to delete subpara-graph (f), "Review by the Board of Disciplinary Appeals," and adopted Rule 12.1, Ala. R. Disc. P., entitled "Procedures — Transitional Provision,” which provides: "For purposes of Rule 12, any matters pending before the Board of Disciplinary Appeals on the effective date of the amendments to these Rules effective October 6, 2008, shall be resolved as soon as possible by the Board of Disciplinary Appeals, and the Board of Disciplinary Appeals shall remain in effect, notwithstanding the effective date of the amendments to these Rules, for the limited purpose of dispensing of pending matters."