PITTMAN, Judge.
John C. Calhoun Community College (“the college”), Dr. Marilyn Beck (the president of the college), the Alabama Department of Postsecondary Education (“the department”), and Dr. Freída Hill (the chancellor of the department), (hereinafter sometimes referred to collectively as “the defendants”), appeal from a summary judgment in favor of Michael Shane King on King’s claim that he was wrongfully dismissed from his employment without cause and without the opportunity for a hearing. We reverse.

Factual and Procedural History

The college hired King as a systems analyst/computer programmer in August 2005, pursuant to a letter of appointment signed by President Beck. The letter of appointment stated, in pertinent part:
“I am pleased to offer you the position of Systems Analyst/Programmer at Calhoun Community College. Your salary placement will be Salary Schedule C3, Step 6, with a salary of $57,475 (12 months). Your effective date of employment will be August 15, 2005.”
King accepted the position and worked at the college for 2 years and 11 months. On June 20, 2008, President Beck notified King that his employment would be “discontinued,” effective July 8, 2008. King sued the defendants, seeking declaratory relief or, in the alternative, the issuance of a writ of certiorari or mandamus requiring the defendants to reinstate him to his employment with the college. The parties filed cross-motions for a summary judgment.
King acknowledged that, having been employed at the college for less than 3 years, he was a probationary employee whose employment could be terminated upon 15 days’ notice without cause and without a hearing under the Fair Dismissal Act. See Ala.Code 1975, § 36-26-101. He argued, however, that he was entitled to contest the termination of his employment pursuant to Section 2.4 of Policy No. 619.01, part of the Revised Hearing Procedure adopted by the State Board of Education.[1] Section 2.4 states:
“If a probationary employee under contract is terminated within the period of a contract, the employee is entitled to be given cause and the opportunity for a hearing under these procedures adopted by the State Board of Education. Employment agreements shall be offered for either three (3), nine (9), or twelve (12) months. If fifteen (15) calendar days prior to the end of the contract period, the person is not notified in writing that his or her services will no longer be required, he/she shall be offered another employment agreement for the same length as the prior contract unless otherwise agreed to by the President and the employee.”
King argued that President Beck’s appointment letter of August 2005, constituted a 12-month contract that, according to the last sentence of section 2.4 of Policy No. 619.01, had been renewed each suc *176 ceeding year. He conceded that he had never received a “renewal” of the alleged contract or any other appointment letter after the initial one, but he contended that his alleged contract had been “automatically renewed” each year because he was not given a notice of nonrenewal. Accordingly, he argued, the college had attempted to terminate his employment “within the period of [his] contract,” and, because he was a “probationary employee under contract,” pursuant to section 2.4 of Policy No. 619.01, he was entitled to a hearing before he was dismissed from employment.
King submitted a brief in support of his summary-judgment motion, arguing that House v. Jefferson State Community College, 907 So.2d 424 (Ala.2005), was disposi-tive of his claim that he was a “probationary employee under contract.” In House, a computer-science instructor accepted on October 19, 2000, an offer of employment from Jefferson State Community College (“Jefferson State”). His employment was to begin on March 2, 2001. On March 2, 2001, Jefferson State notified the instructor that his employment would terminate 15 days later. The instructor sued Jefferson State, arguing that he was entitled to a hearing before he was dismissed from his employment. The instructor relied on Policy No. 619.01 and argued, as King does here, that he was a “probationary employee under contract.” The trial court concluded that the instructor had been hired pursuant to an “ ‘open-ended letter of appointment,’ ” 907 So.2d at 426, that did not constitute an employment contract because it did not specify an ending date, and it entered a summary judgment in favor of Jefferson State. The supreme court reversed, concluding that the instructor was a “probationary employee under contract.” The court stated:
“Section 3.14 [now section 2.4] of policy number 619.01, the Revised Hearing Procedure, which was incorporated into House’s contract of employment, provides that ‘[e]mployment agreements shall be offered for either 3, 9, or 12 months’ (emphasis added). House’s contract of employment indicated that his salary was to be derived from salary schedule D. The salary stated in House’s contract of employment was the amount shown as rank II, step 10 of schedule D for ‘9-month’ employment. While House’s contract stated a beginning date for his contractual period, it did not state an ending date. However, considering the contract as a whole, the only reasonable conclusion is that House was employed on a 9-month basis. Ryan Warranty Servs., Inc. v. Welch, 694 So.2d 1271, 1273 (Ala.1997) (‘[A] contract is to be construed in its entirety and not solely on a single provision.’).”
907 So.2d at 427 (footnote omitted).
In support of their summary-judgment motion, the defendants in the present case submitted, among other things, Chapter III of the College Personnel Handbook, entitled “Personnel Policies and Procedures.” Section VIII of that chapter, entitled “Contracts,” provides, in pertinent part:
“VIII. Contracts
“A. Salary Schedule D Contracts “The President of Calhoun Community College may offer contracts for one semester, two semesters, or twelve months, as appropriate, to librarians, counselors, and instructors ....
[[Image here]]
“B. Contracts for Other Employees
“The President of Calhoun Community College may offer employment contracts as appropriate, to other college personnel, provided funds are available ([State Board of Education] Policy 603.01). The President may *177 also confirm, employment for all employees not on Salary Schedule D by letters of appointment, which shall state the beginning date of employment, salary, job title, and other relevant information.”
(Emphasis added.)
The defendants argued that King was not a “probationary employee under contract,” because that term, as used in section 2.4 of Policy No. 619.01, refers to employees who are hired pursuant to an employment contract for a specified period, whereas King, they said, was hired pursuant to a letter of appointment that was “open-ended” because it did not specify an ending date. In support of that argument, the defendants submitted the affidavits of Chancellor Hill, President Beck, Kimberly Gaines, the human-resources coordinator for the college, and Joan Davis, general counsel and vice-chancellor for legal and human resources for the department, all of whom stated that the only employees who are required by college policy to be hired under a contract for a specified period are employees paid under Salary Schedule D and averred, Salary Schedule D applies only to librarians, counselors, and instructors. College presidents have the discretion, the affiants attested, to appoint other employees by means of a “letter of appointment” that specifies a beginning date but need not specify an ending date. According to the affiants, if a letter of appointment does not specify an ending date, the appointment is “open-ended” and will continue until such time as the appointment is discontinued by the president of the college. In her affidavit, Kimberly Gaines stated that
“[i]t is the general practice of Calhoun Community College to appoint non-faculty personnel by way of an open-ended letter of appointment rather than a contract for a specified period of time, and Mr. King’s appointment was conducted in the same manner as other non-faculty personnel.”
In their brief opposing King’s summary-judgment motion, the defendants argued that House is distinguishable on the basis that the plaintiff in House, an instructor who was paid on Salary Schedule D, was an employee whose employment contract was required to be for a specified period, whereas King was not an instructor, was not paid on Salary Schedule D, and did not have any employment document indicating that he was hired for a specified period. In deposition testimony, President Beck stated that the parenthetical reference to “12 months” in her appointment letter to King (“Your salary placement will be Salary Schedule C3, Step 6, with a salary of $57,475 (12 months)”) designated the rate of King’s compensation, not the length of his appointment. She explained:
“To illustrate how the rate of compensation is applied, Mr. King was paid a monthly salary based on one-twelfth of the annual rate. Had Mr. King been terminated six months after his initial appointment, he would have been paid approximately $28,737 dollars in compensation, or half of $57,475.”
In her affidavit, President Beck stated that King’s rate of compensation had been increased three times: to $60,927, effective September 1, 2005; to $63,973, effective September 1, 2006; and to $70,198, effective September 1, 2007, “in accordance with [the college’s] institutional salary increase procedures.” She explained that
“King’s pay increases each took effect on September 1 of the respective year because under State Board of Education policy and institutional practice, annual raises are granted as of the first date of a contract for employees ‘under contract’ for a given academic year, but *178 granted on September 1 for all other employees.”
The trial court entered a summary judgment in favor of King, concluding that House was controlling and required that King “be given cause and the opportunity for a hearing pursuant to the Revised Hearing Procedure adopted by the State Board of Education.” After their post-judgment motion was denied, the defendants filed a timely appeal.

Standard of Review

“ ‘Our review of a summary judgment is de novo.’ Crutcher v. Wendy’s of North Alabama, Inc., 857 So.2d 82, 85 (Ala.2003). ‘The nature of our review of the legal conclusions of a trial court is de novo.’ Omega Leasing Corp. v. Movie Gallery, Inc., 859 So.2d 421, 422 (Ala. 2003). ‘When [the] terms [of an agreement] are clear and certain, the court ... has the duty to determine the meaning of the agreement.’ Terry Cove North, Inc. v. Baldwin County Sewer Auth., Inc., 480 So.2d 1171, 1173 (Ala. 1985).”
House v. Jefferson State Cmty. Coll., 907 So.2d at 427.

Discussion

The trial court erred in determining that House requires that King be given cause and the opportunity for a hearing pursuant to Policy No. 619.01. Unlike the employee in House, who was an instructor paid on Salary Schedule D, King was a nonfaculty employee paid on Salary Schedule C. In House, the supreme court placed special emphasis on the requirement in Policy No. 619.01 that an employment contract for an instructor on Salary Schedule D specify the period of employment. The court noted that “ ‘[employment agreements shall be offered for either 3, 9, or 12 months.’ ” 907 So.2d at 427 (emphasis added in House), and it determined that the requirement was satisfied by the notation in the instructor’s appointment letter that the instructor was being hired for “ ‘9-month’ employment.” Id.
Although King argues that the parenthetical reference to “12 months” in his appointment letter also stated the period of his employment, so as to make the appointment letter an employment contract for a specified period, the defendants presented evidence to the contrary — specifically, the testimony of an individual charged with interpreting and applying college policies. President Beck explained that the parenthetical reference to “12 months” in her appointment letter designated the rate of King’s compensation, not the length of his appointment. Because schools and colleges, unlike most other employers, pay some of their employees on a 12-month basis, and others on the basis of the academic calendar, it is not unheard of among schools and colleges to describe an employee’s pay, or “rate of compensation,” in terms of the period during which the compensation is paid. Cf. Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting a letter of appointment for a community-college employee that described “ ‘a rate of compensation equivalent to a full-time annual salary of $12,500.00’ ”) (emphasis added; emphasis omitted).
From all that appears in the House opinion, no representative of Jefferson State or the department presented evidence as to the meaning of the 9-month notation in the instructor’s appointment letter. In the absence of such evidence, our supreme court reasonably interpreted the notation to state a contract of employment for a 9-month period. In the present case, however, the trial court was presented with evidence from President Beck as to the reason for designating King’s pay *179 in terms of a 12-month period. President Beck said the reason was unrelated to the period of King’s employment, however, which employment period, according to department and college officials, was open-ended. The trial court was also presented with the affidavit of Chancellor Hill, stating that nonfaculty employees are not usually offered employment contracts and that a letter of appointment is not an employment contract for a specified period because it has no ending date.
“ ‘An agency’s interpretation of its own policy is controlling unless it is plainly erroneous.’ ” Ex parte Alabama Dep’t of Postsecondary Educ., 50 So.3d 489, 446 (Ala.Civ.App.2009) (quoting Ex parte Board of Sch. Comm’rs of Mobile County, 824 So.2d 759, 761 (Ala.2001)). In concluding that House was controlling, the trial court apparently gave little or no weight to the statements of the officials charged with interpreting and applying the department’s and the college’s policies. However, under similar circumstances, our supreme court in Ex parte Craft, 727 So.2d 55 (Ala.1999), rejected the argument of a technical-college administrator who had been hired pursuant to an ‘“open-ended letter of appointment,’” 727 So.2d at 58, that he was a probationary employee under contract based, in part, on an affidavit of the former interim president of the technical college, stating that
“ ‘[i]t was [the technical college’s] policy that contracts not be given to any administrator. Each employee receives an open-ended letter of appointment, which means that the employee could be terminated at any time during the probationary period (36 months).’ ”
727 So.2d at 57-58. In Craft, the supreme court held:
“[The administrator’s] arguments depend principally upon his assertion that he was under contract and, thus, that his employment could not be terminated before the end of the contract period without cause and a hearing. However, he offers no evidence of a written contract. The defendants presented evidence indicating that [the administrator] was appointed, by a letter of appointment, to the position of interim dean of instruction effective May 1, 1992, and, by another letter of appointment, to the position of dean of instruction effective May 1, 1993. Neither of these documents constitutes a contract of employment for a specified time, and the parties presented no other evidence of such a contract. Thus, under § 36-26-101(c), [the administrator’s] employment was subject to termination after 15 days’ notice.”
727 So.2d at 60 (footnote omitted).
The supreme court did not overrule Craft when it decided House. Therefore, we conclude that the test to be applied in determining whether a letter of appointment such as the one King received constitutes a contract of employment for a specified period is as follows: in the absence of evidence indicating how the department has interpreted or the employing college has applied such an employment document, the document is properly interpreted as any alleged contract would be, that is, it is construed in its entirety according to the plain meaning of its terms. See Ryan Warranty Servs., Inc. v. Welch, 694 So.2d 1271, 1273 (Ala.1997) (quoted in House, 907 So.2d at 427). When, however, a court is presented with evidence indicating how the department has interpreted or the employing college has applied the employment document, a court may decline to follow that guidance only if it is clearly erroneous.
Because House is distinguishable, it is not dispositive of King’s claims. The trial court erred in holding that King was wrongfully dismissed from his employment *180 without cause and without the opportunity for a hearing. We reverse the trial court’s judgment and remand the case for the entry of a judgment in favor of the defendants.
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. The version of Policy No. 619.01 that is in the record before us states that its effective date is "3/24/05” and that it supersedes former versions of the policy "issued 10-28-04 [and] 12-08-94.” The record indicates that current section 2.4 of Policy No. 619.01 corresponds to former section 3.14.