Bobby Joe Yeager and Dorothy Duncan appeal from the trial court's judgment in favor of Wendy Lucy, Tanya Taylor, and Edward Woodruff in this declaratory-judgment action.
 Facts and Procedural History
Edna Yeager and T.R. Yeager divorced in 1978. Following the divorce, Edna obtained title to their marital home, which was located in Jefferson County. Edna married Larry James Woodruff in 1987. Both had adult children from their previous marriages, and no children were born of the marriage. Edna and Larry lived in Edna's house. On April 17, 1990, Edna executed a deed to the house; that deed provided, in pertinent part, as follows:
 "To the undersigned grantor or grantors in hand paid by the Grantees herein, the receipt whereof is acknowledged, we, Edna I. Yeager (herein referred to as grantors) [sic] do grant, bargain, sell and convey unto Edna Yeager Woodruff, a married woman, and her children, Dorothy Marie Dunkin[sic] Bobby Joe Yeager (herein referred to as grantees) as joint tenants with right of survivorship, the following real estate situated in Jefferson County. . . .
 "Said Edna Yeager Woodruff hereby retains a life estate in and to said property hereinabove described, with the measure of `life' being the existence of Edna Yeager Woodruff.
 "And I(we) do for myself (ourselves) and for my (our) heirs executors, and administrators covenant with the said GRANTEES, their heirs and assigns, that I am (we are) lawfully seized in fee simple of said premises; that they are free from all encumbrances unless otherwise noted above, that I(we) have a good right to sell and convey the same as aforesaid; that I(we) will and my (our) heirs, executors and administrators *Page 462 
shall warrant and defend the same to the said GRANTEES, their heirs and assigns forever, against the lawful claims of all persons."
(Capitalization in original.) The deed was signed by Edna; it was not signed by Larry.
Edna and Larry lived in the house until September 1997 when Larry allegedly abandoned Edna when she was diagnosed with cancer. Larry established residence in Virginia and died intestate in 1999. Edna died intestate in 1998.
On February 14, 2001, Larry's adult children, Wendy Lucy, Tanya Taylor, and Edward Woodruff (hereinafter referred to as "the Woodruff siblings"), filed a declaratory-judgment action against Edna's adult children, Bobby Joe Yeager and Dorothy Duncan (hereinafter referred to as "the Yeager siblings"), regarding their rights as Larry's heirs arising out of the April 17, 1990, deed executed by Edna. The Woodruff siblings sought a declaration that they were entitled to Larry's share of the property. The Yeager siblings answered the complaint and asserted that Larry had no inheritable interest in the property and that Larry had abandoned Edna.[1]
The case proceeded to trial on January 31, 2006. At the close of the Woodruff siblings' case-in-chief, the Yeager siblings presented their first witness. During the witness's testimony, the trial judge called the counsel for the parties into his chambers. Subsequently, the trial judge stated:
 "All right. Ladies and gentlemen, let me go ahead and let you know how I'm going to rule on this case. Let me say, first of all, that we have tried the case pretty broadly. And I spoke with the attorneys. And we really tried — after talking and narrowing down what we are talking about, the only issue we have here today is whether or not that deed executed on April 17, 1990, was a valid deed. The Code of the State of Alabama provides that no deed of the homestead by a married person shall be valid without the voluntary signature and consent of the husband or wife.
 "The testimony is undisputed that they were married in 1990. Because they were married and because of this Code section, the deed would be invalid. And there may be some — I think there would be some issues raised that may very well be issues in the probate matter that is still pending. As far as what we have here, which is a separate action for declaratory judgment, that's all I had to decide on. And it's really a very simple and straightforward case in that way. I have been pretty patient, but I decided to go ahead and let the attorneys know what I was thinking on it. And so at this time that will be the decision. I will get you all a copy of a written decision on it in the mail."
On February 1, 2006, the trial court entered an order declaring that the April 17, 1990, deed was invalid. The Yeager siblings appeal.
 Standard of Review
The trial court's judgment followed a bench trial, at which the court heard ore tenus evidence. "`When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.'"Smith v. Muchia, 854 So.2d 85, 92 (Ala. 2003) (quotingAllstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996)). *Page 463 
"`The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.' Mallv. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to `disputed issues of fact,' whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark,662 So.2d 669, 672 (Ala. 1995). The ore tenus standard of review provides:
 "`[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.'"
Reed v. Board of Trs. for Alabama State Univ.,778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane,342 So.2d 358, 360 (Ala. 1977)). However, "that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts." Ex parteBoard of Zoning Adjustment of Mobile, 636 So.2d 415, 417
(Ala. 1994).
 Analysis
The Yeager siblings argue that the trial judge erred in denying them the opportunity to present a full defense when he announced his ruling before they had had an opportunity to present all of their witnesses. They argue that, in denying them the opportunity to present a defense, the trial court violated Art. I, § 10 of the Constitution of Alabama 1901, which provides "[t]hat no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party." However, the record does not indicate that the Yeager siblings objected to the trial court's alleged violation of their constitutional right to be heard.
 "The rule is well settled that a constitutional issue must be raised at the trial level and that the trial court must be given an opportunity to rule on the issue, or some objection must be made to the failure of the court to issue a ruling, in order to properly preserve that issue for appellate review. This Court succinctly stated this rule as follows:
 "`In order for an appellate court to review a constitutional issue, that issue must have been raised by the appellant and presented to and reviewed by the trial court. Additionally, in order to challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated.'
 "Alabama Power Co. v. Turner, 575 So.2d 551
(Ala. 1991) (citations omitted)."
Cooley v. Knapp, 607 So.2d 146, 148 (Ala. 1992). Because the Yeager siblings failed to object in the trial court, the issue is not preserved for appellate review.
Second, the Yeager siblings argue that the trial court erred in concluding that a married woman may not execute a deed conveying her homestead without the signature of her husband when the woman had owned the home in fee simple for 23 years and the husband knew of her death and did not make a claim against her estate.
Section 6-10-3, Ala. Code 1975, provides:
 "No mortgage, deed, or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband *Page 464 
or wife, which must be shown by his or her examination before the officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other conveyance, which certificate must be substantially in the form of acknowledgment for individuals prescribed by Section 35-4-29."
The purpose of this statute is to protect one spouse from the conveyance of the homestead by the other spouse without the first spouse's consent. Gowens v. Goss, 561 So.2d 519
(Ala. 1990). "A `homestead' is generally defined as the home or house where a family resides, where the head of the family dwells, and any adjoining or appurtenant land used for the family's comfort and sustenance." Sims v. Cox,611 So.2d 339, 340 (Ala. 1992). It is undisputed that Edna and Larry married in 1987; that the house located in Jefferson County was Edna and Larry's homestead on April 17, 1990, when the deed was executed; and that Larry did not sign the deed. The house was their family residence in 1990, even though the house was the sole property of Edna before the marriage. Accordingly, § 6-10-3 applies to the 1990 deed, making Larry's signature necessary.
With regard to the Yeager siblings' contention that Larry had to "make a claim" against Edna's estate in order to secure his intestate inheritance, § 43-8-41, Ala. Code 1975, contains no such requirement. Section 43-8-41 sets out the intestate share of the surviving spouse. Although Larry did not "claim" his share of Edna's estate, the share passed to him by intestacy and, upon his death, to his children. Additionally, § 43-2-830 provides that upon a person's death, the decedent's real property, in the absence of testamentary disposition, devolves to the decedent's heirs. In the instant case, Edna's heirs included her surviving spouse, Larry.
Last, the Yeager siblings argue that Larry abandoned Edna and, therefore, that Larry forfeited his interest in the homestead and the April 17, 1990, deed transferring the marital home to them was valid. The Yeager siblings are correct that in order for a spouse to be entitled to the protection of § 6-10-3, the property at issue must be the spouse's actual place of residence and that a spouse can abandon their homestead interest. In Ex parte Pielach, 681 So.2d 154
(Ala. 1996), this Court held that the husband's 1991 conveyance of the marital homestead to his adult daughter was valid, even though the wife had not signed the deed of conveyance, because the wife had abandoned the marital home in 1985 and had established residence in another state. In the present case, although the trial court did not make a finding of abandonment, there is evidence in the record to support such a finding. However, Larry's alleged abandonment occurred in 1997, and the deed transferring the property was executed on April 17, 1990. The April 17, 1990, deed transferring the homestead was void because it did not contain Larry's signature. Larry's subsequent abandonment of the homestead did not retroactively validate the attempted April 17, 1990, conveyance to the Yeager siblings, and it is of no avail that Larry later abandoned his homestead interest.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
COBB, C.J., and LYONS, STUART, and MURDOCK, JJ., concur.
[1] The personal representatives appointed to administer both Edna's estate and Larry's estate were added as defendants; the personal representatives are not parties to this appeal. *Page 465