PITTMAN, Judge.
Ethel Williams and seven of her eight surviving siblings appeal from a judgment of the Lowndes Circuit Court entered in favor of their nephew, Alfred Jackson, the son of a deceased sibling. We affirm in part, reverse in part, and remand with instructions.

*209
Factual and Procedural Background

The marriage of Emma Jackson (“Emma”) and Matthew Jackson, Sr. (“Matthew, Sr.”), produced 10 children: Ethel Jackson Williams; John Jackson; Matthew Jackson, Jr.; Willie Jackson; James Jackson; Leon Jackson; Dorothy Jackson Hinson; Clifford Jackson; Horace Jackson; and Annie Belle Jackson. Emma and Matthew, Sr., owned 158 acres of real property in the White Hall community of Lowndes County. In 1968, they conveyed 3.288 acres to their daughter, Annie, who built a house on the .property. In 1978 or 1979, Annie’s house burned, and a new house was constructed. Matthew, Sr., died intestate and Emma went to live with Annie in the new house. Emma died intestate in 2002. Annie died intestate in 2007, survived by one child, Alfred Jackson, the appellee. In July 2008, the Lowndes Probate Court appointed Alfred as the administrator of Annie’s estate.
On June 4, 2009, the nine surviving Jackson siblings filed a complaint seeking declaratory and injunctive relief and naming Alfred, individually and in his capacity as the administrator of Annie’s estate, as the defendant.[1] The complaint alleged that Annie’s house was not located on the property that had been conveyed to her by Emma and Matthew, Sr., in 1968, but on property that had been owned by Emma and Matthew, Sr., during their lifetimes, and, consequently, the siblings asserted, the house was jointly owned by all lineal descendants and heirs at law of Emma and Matthew, Sr. The complaint further alleged that Annie had executed a holographic will that, the siblings asserted, had manifested Annie’s intent that the house was to be used and enjoyed by all the heirs of Emma and Matthew, Sr., as a “family home house.” The siblings sought a declaration that the heirs of Emma and Matthew, Sr., jointly owned the house and an order enjoining Alfred from prohibiting or restricting their access to the house.
On June 24, 2009, the trial court entered an order denying the declaratory and in-junctive relief sought by the Jackson siblings and stating that “[aJll other issues are reserved for future consideration of the court, including those raised in the defendant’s motion to dismiss.” The trial court stated that its order was based on evidence presented at a June 18, 2009, hearing — including a certified copy of a 1968 deed from Emma and Matthew, Sr., to Annie and a survey of the property described in that deed — indicating that there was no dispute that the house was located on property that had been conveyed to Annie by Emma and Matthew, Sr., in 1968. The trial court further stated that, at the hearing, siblings Ethel Williams and John Jackson had “admitted that no verified claim had been filed with the probate court concerning the house and/or any of its contents that [the Jackson siblings] now claim to own.”
The record on appeal as originally certified and transmitted to this court did not contain either a transcript of the June 18, 2009, hearing, or Alfred’s motion to dismiss the siblings’ complaint, or a summary-judgment motion filed later by Alfred, despite the siblings’ having designated the “[ejntire record (less those items set forth in Rule 10(a)[, Ala. R.App. P.]),” to be included in the record on appeal. Pursuant to Rule 10(f), Ala. R.App. P., this court, on its own initiative, directed that the record be supplemented to include Alfred’s two motions.
Alfred’s first motion sought dismissal of the siblings’ claims to personal property in *210 the house based on their failure to have filed any claims against Annie’s estate within the time allowed by § 43-2-350, Ala.Code 1975. The second motion sought a summary judgment on all claims, contending that the claims were barred either by the doctrine of laches, or by the 20-year rule of repose, or by the siblings’ failure to have filed a timely claim against Annie’s estate.
In support of his summary-judgment motion, Alfred attached, among other things, an affidavit from the Lowndes County probate judge, stating that none of the siblings had filed a claim against Annie’s estate. The siblings filed a response in opposition to Alfred’s summary-judgment motion, supported by, among other things, the affidavit of John Jackson and excerpts from the transcript of John Jackson’s testimony at the June 18, 2009, hearing, both tending to show that John Jackson had paid a $6,000 down payment on the Mercedes-Benz automobile that Annie had purchased in 2003. Alfred moved to strike as inadmissible all the evidentiary materials submitted in support of the siblings’ response to the summary-judgment motion.
Based upon the portions of the trial court’s June 24, 2009, order that are quoted and emphasized above, and based upon excerpts from the transcript of the June 18, 2009, hearing that were submitted in support of and in opposition to Alfred’s summary-judgment motion, it is clear that the parties litigated matters other than the location of Annie’s house at the June 18, 2009, hearing. Specifically, it appears that the following issues were tried by the consent of the parties at that hearing: whether the siblings had any equitable interest in Annie’s house based on their having contributed money, labor, and materials for the reconstruction of Annie’s house after the fire in the late 1970s; whether any of the furniture, furnishings, and household goods in Annie’s house had belonged to Emma and Matthew, Sr., during their lifetimes or to any of the surviving Jackson siblings; whether John Jackson had any interest in the Mercedes-Benz automobile that Annie owned at the time of her death by virtue of his allegedly having made a down payment on the purchase price of the vehicle and his having cosigned Annie’s promissory note to First Lowndes Bank in connection with the purchase of the vehicle; whether Ethel Williams had any interest in the Mercedes-Benz automobile by virtue of her having made, after Annie’s death, the monthly payments on Annie’s loan indebtedness to First Lowndes Bank; and whether Ethel Williams had any interest in Annie’s house by virtue of her having paid the utility bills and ad valorem taxes after Annie’s death.[2]
*211 Before the trial court ruled on the additional matters in dispute, the parties requested that the case be referred to mediation. The trial court ordered the parties to mediation on May 25, 2010. On August 10, 2010, the parties agreed to settle all issues except those relating to the Mercedes-Benz automobile as follows:
“1. Alfred Jackson will convey the home-house property [on] Freedom Road[ ] to the Jackson heirs for the total sum of $150,000 and the assumption of the mortgage, which is approximately $30,500. The $150,000 will be paid as follows: $100,000 within 30 days of this date and $50,000 within 90 days of today’s date. Possession of the property will be delivered and deed conveyed upon full payment and assumption of mortgage, but not sooner than 30 days from today’s date. If full payment is made within 30 days, Alfred Jackson shall have 10 days to deliver a deed and vacate the premises.
“2. The parties agree that the contents of the house will be divided as follows:
“Alfred Jackson will have possession of all property identified as owned by his mother.
“The Jackson [siblings] will have all of the property identified as owned by their mother, father, and Matthew Jackson, Jr., and other siblings. The parties agree to deal in good faith in identifying the property. The parties agree that representatives will meet within 7 to 10 days at the home to attempt to resolve any disputes as to the furniture in the house.
“Alfred Jackson agrees that the portrait of Emma is to be displayed in a place agreeable to the parties. Ownership will be in all of the Jackson heirs, including Alfred Jackson.
“The issues as to the automobile are not decided in this agreement. No property will be removed from [the] house other than Alfred Jackson’s belongings, pending ownership being identified.”
In December 2010, the Jackson siblings filed a motion alleging that Alfred had breached the mediation agreement and requesting that the trial court enforce that agreement.
The trial court conducted a final hearing on September 7, 2011, during which the parties agreed that the only remaining issues were (1) the ownership of the personal property in Annie’s house and whether Alfred had breached the mediation agreement with respect to that property and (2) whether anyone other than Alfred had an interest in the Mercedes-Benz automobile.
On November 28, 2011, the trial court entered a judgment that stated, in pertinent part:
“1. The issue of the location and ownership of Annie’s house and the surrounding curtilage ... is moot. The mediator reported to the court that the [Jackson siblings] agreed to purchase that property from [Alfred] during the mediation held in this matter and the parties have advised the court that the sale of Annie’s house was completed during calendar year 2010.
“2. Annie’s 2001 Mercedes-Benz car is the property of Aired Jackson and it is free from any claim or lien that has been made or could have been made by any one or all of the [Jackson siblings] ....
*212 “3. The items of furniture and other items of household goods and personal property removed from the subject residence located [on] Freedom Road by Alfred Jackson belong to Alfred Jackson and said items are not subject to any claim or lien that has been or could have been made by any one or all of the [Jackson siblings]. The items of furniture and other items of household goods and personal property that were not removed from the subject residence by Alfred Jackson do not belong to Alfred Jackson and he is divested of any interest therein in favor of the [Jackson siblings] as their interest may appear.
“4. The individual claims made by Ethel Williams and/or John Jackson in the form of the filings and/or testimony submitted in these proceedings seeking the return of money allegedly paid for or on behalf of Annie Jackson and/or Alfred Jackson in the form of car payments, down payments, loans, ad valorem taxes, and the like, must fail because they are not supported by sufficient credible and/or admissible evidence. The repayment relief requested by John Jackson and Ethel Williams in these proceedings is hereby denied. All other relief requested in the individual claims made by Ethel Williams and/or John Jackson is hereby denied, separately and severally.
“It is further Ordered, Adjudged and Decreed that all relief not specially granted herein is denied.”
Following the denial of their postjudgment motion on January 4, 2012, the Jackson siblings filed a timely notice of appeal on February 3, 2012. The appeal was transferred to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

The trial court conducted several hearings in this case and had the opportunity, on more than one occasion, to observe the demeanor and credibility of the witnesses.
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review provides:
“ ‘ “[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’ ”
Yeager v. Lucy, 998 So.2d 460, 463 (Ala.2008) (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000), quoting in turn Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). “[I]n the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.” Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).

Discussion

I.
The Jackson siblings argue that the trial court erred in determining that the Mercedes-Benz automobile was “the property of Alfred Jackson and it is free from *213 any claim or lien that has been made or could have been made by any one or all of the [Jackson siblings].” They argue that they established through documentary and testimonial evidence that, on October 15, 2003, Annie’s brother, John Jackson, had loaned Annie $6,000 for a down payment on the automobile; that, during her lifetime, Annie had acknowledged her obligation to repay the loan; and that John Jackson is entitled to be reimbursed. They also argue that they established that, after Annie’s death, Annie’s sister, Ethel Williams, had made the monthly payments on Annie’s installment loan for the automobile and that she is entitled to be reimbursed.
Leaving aside the fact that the trial court could reasonably have determined that the proof of John Jackson’s allegedly having loaned $6,000 to Annie for the purchase of the vehicle, and of Ethel Williams’s having made, from her own funds, the monthly payments on the loan indebtedness associated with that vehicle, was insufficient, the trial court’s judgment as to this issue is due to be affirmed on the ground that neither John Jackson nor Ethel Williams filed a claim against Annie’s estate pursuant to the nonclaims statute, § 43-2-350, supra. That statute provides, in pertinent part:
“(b) All claims against the estate of a decedent, ... whether due or to become due, must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur, provided however, that any creditor entitled to actual notice as prescribed in section 43-2-61 [, Ala.Code 1975,] must be allowed 30 days after notice within which to present the claim, and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited. Presentation must be made by filing a verified claim or -verified statement thereof in the office of the judge of probate of the county in which the letters are granted.”
II.
At the September 7, 2011, hearing, the Jackson siblings presented evidence indicating that, when they received possession of the house, they discovered that Alfred had taken personal property that did not belong to him and that the house was a “mess.” They introduced photographs that purported to document the condition of the house after Alfred left.
The siblings first argue that the trial court’s implicit determination — that Alfred had not breached the mediation agreement with respect to the personal property in Annie’s house — is not supported by the evidence. They maintain that the evidence demonstrated that Alfred violated the following provisions of the agreement:
“The parties agree to deal in good faith in identifying the property. The parties agree that representatives will meet within 7 to 10 days at the home to attempt to resolve any disputes as to the furniture in the house.
[[Image here]]
"... No property will be removed from [the] house other than [Alfred’s] belongings, pending ownership being identified.”
The siblings contend that Alfred’s lack of “good faith in identifying the personal property” in the house was demonstrated by his refusal to meet with them or their representatives within 7 to 10 days of the signing of the mediation agreement to resolve any disputes as to the ownership of the property. Alfred asserts that he offered to meet with the siblings within the *214 stated time but that no meeting ever took place.
At the September 7, 2011, hearing, the parties’ respective counsel argued the issue, but there was no testimonial evidence regarding the reason that a post-mediation meeting to resolve disputes as to the contents of the house never occurred. Instead, the trial court heard testimonial evidence indicating that, before mediation, several representatives of the Jackson siblings, along with the siblings’ counsel, had toured and inspected the house, after which Ethel Williams and her daughter had developed a room-by-room written inventory of the contents of the house. The trial court was presented with documentary evidence indicating (a) that on September 27, 2010 (approximately seven weeks after the mediation agreement was signed), the siblings’ counsel had written a letter to Alfred’s counsel, stating that Alfred could have “all things in the second bedroom on the left where he slept” and (b) that, no later than December 29, 2010, Alfred’s counsel had provided the siblings’ counsel with a copy of the written inventory that had previously been developed by Ethel Williams and her daughter, upon which copy Alfred had marked the items on the inventory with either an “A” — indicating that the property was his or had been Annie’s, and, therefore, was a part of Annie’s estate, and would be taken “away” from the house — or with an “S,” indicating that the property would “stay” with the house.
The record does not indicate that, before the September 7, 2011, hearing, the siblings ever communicated their disagreement with Alfred’s designations on the inventory. At the hearing, however, Ethel Williams’s daughter (who is also named “Ethel Williams” and who participated in making the inventory) testified that, with very few exceptions, everything in the house should have stayed with the house. She specified various items (such as a door, a lamp, and area rugs) that, she said, she knew had been purchased for Annie by relatives and concluded that most of the furnishings in the house belonged to someone other than Annie. On cross-examination of Ethel Williams’s daughter, the following occurred:
“Q. [By Alfred’s counsel:] So it’s your testimony that virtually everything in that house, virtually every item in that house belonged to somebody other than Annie?
“A. Yes.
“Q. But you’ve got no proof to back it up, no receipts, no stores, nothing to back it up?
“A. Not in my possession, I don’t have it.
“Q. Okay. So the answer is no. So all this really is just your opinion?
“A. Yes, it is.”
The trial court was authorized to conclude that the personal property in the house where Annie had lived since 1978 or 1979, and that Alfred, her only child, had designated by the letter “A” on the inventory, “belonged” to Annie and that, even if some items had been “purchased for Annie” by family members, those items were gifts. See Charles C. Marvel, Annot., Unexplained, Gratuitous Transfer of Property from One Relative to Another as Raising Presumption of Gift, 94 A.L.R.3d 608 (1979).
Based on the documentary and testimonial evidence presented at the September 7, 2011, hearing, the trial court could reasonably have determined that Alfred had not breached the mediation agreement but, rather, that he had, in good faith, identified “his belongings” by designating with the letter “A” on the inventory those items that had belonged to his mother during *215 her lifetime and now belonged to him as her sole heir.
The trial court could also reasonably have determined that, with two exceptions, Alfred had removed only the items designated on the inventory with the letter “A” from the house. The Jackson siblings presented testimonial and photographic evidence indicating that, when they received possession of the house, a heater that had been connected to a gas line in a fireplace opening and a bathtub faucet (both of which Alfred had designated with the letter “S” on the inventory) were missing.
We, therefore, affirm the trial court’s judgment in all respects except paragraph three. As to that paragraph alone, we reverse the judgment, and we remand the cause with instructions that the trial court amend paragraph three of its judgment to read as follows:
“3. With the exception of the gas heater and the bathtub faucet, the items of furniture and other‘items of household goods and personal property removed from the subject residence [on] Freedom Road by Alfred Jackson belong to Alfred Jackson and said items are not subject to any claim or lien that has been or could have been made by any one or all of the [Jackson siblings]. Alfred Jackson is directed to return the heater and the bath fixture or to reimburse the siblings for the value thereof within 30 days.”
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. Dorothy Jackson Hinson later filed an affidavit stating that she had not authorized her name to be included as a plaintiff and that she was not a party in the action.

. In its final judgment, the trial court stated:
“A fair reading of the various pleadings, motions, etc., filed by the [Jackson siblings] and the court's observations during the various hearings held in this matter, shows that the [Jackson siblings] initially asked the court to determine the ownership interests of the [Jackson siblings] in the home located at [on] Freedom Road in the Town of Whitehall, Alabama ('Annie’s house'). In subsequent filings, the [Jackson siblings] asked the court to determine, in essence, the identity and ownership interest in various items of personal property that allegedly belonged to [Emma and Matthew, Sr.,] when they died; the ownership of Annie's 2001 Mercedes-Benz C240 automobile ... ('Annie's car’); and the validity of certain claims of John Jackson and Ethel Williams involving Annie’s house, Annie’s car, and her estate. It is well settled law that parties may agree to try their case upon a theory or theories of their choosing and their agreements will be binding on them, Reese Funeral Home v. Kennedy Electric Co., 370 So.2d 1030 (Ala.Civ.App.1979). [Alfred] filed numerous motions, objections, briefs, and responses in the case. A fair reading of *211 the various documents filed by [Alfred] and the court’s observations during the various hearings held in this matter show that [Alfred] agreed to the trial of the issues set out herein.”