Murdock, Justice.
Emma Carter Hardy (“Hardy”), acting on behalf of the estate of Julius Carter, Sr., deceased, appeals from a final order entered by the Montgomery Circuit Court against her and in favor of Julius L. Hardin (“Hardin”) in a will contest. Hardy is the daughter of Julius Carter, Sr. (“Carter”); Hardin is the son of Thelma Carter Malone, who is also a daughter of Carter’s.
Carter died on December 23, 2002. He was survived (1) by four daughters, Hardy, Gloria Jean Carter, Thelma Carter Malone, and Deloris Carter Johnson; (2) by one son, Cleveland Carter (sometimes referred to as Cleavon Carter);[1] and (3) by grandchildren through two deceased sons: Luther Carter, whose children are Luther Heard and Jackie Heard, and Robert Carter, whose children are Venus Franklin and Gloria Dupree. Carter also had another deceased son, Julius Carter, Jr., who died without any descendants.
On December 16, 2009, Hardy filed a petition in the Montgomery Probate Court for letters of administration as to Carter’s *624 estate. Hardy alleged in the petition that Carter had died “leaving no Last Will and Testament, so far as [Hardy] knows or believes,” and that the only asset of Carter’s estate was a parcel of real property located in Montgomery County. The parcel of real property consisted of approximately 180 acres that Carter had farmed. Hardy requested that she be appointed as personal representative of Carter’s estate. In her petition, Hardy disclosed the existence of all the heirs listed above, except Venus Franklin.
On December 17, 2009, the probate court issued an order appointing Hardy personal representative of Carter’s estate, and the probate court issued letters of administration to Hardy. Thereafter, Hardy filed an inventory for Carter’s estate; the inventory included the aforementioned parcel of real property as the only asset of Carter’s estate.
On November 30, 2011, Hardy filed a petition for final settlement of Carter’s estate. The petition for final settlement was set for a hearing to be held on January 25, 2012.[2]
On January 25, 2012, Hardin filed a letter with the probate court. The letter stated:
“I ask that you postpone this Petition for Final Settlement ... as I am a party, but a nonlisted party to the ease of Julius Carter’s land. I am writing this letter to ask that this hearing be postponed to take into consideration that the will of Julius Carter was willfully not probated and fraudulently acted as if there was not one.
“This hearing would progress as if there was no will and would make any motion null and void. The execut[rix] of the will, Gloria Carter ..., failed to fulfill her duties and probate the aforementioned will of Julius Carter for her own purposes. She intended to leave me out of the will as I am listed as party to the will from my grandfather. She consciously decided to leave me out of the will and acted as if there was no will at all. There was adequate time for her to go through the legal process and have the will probated.
“Not knowing the laws and statute of limitations, I was at a loss as to what could be done to show that I am a named party in my grandfather’s will. I did not have available funding to secure a lawyer to help or figure out what steps I could make in making sure the lawful process of probate was carried out. I recently obtained a copy of the will from the Office of [Attorney] Sandra Lewis in the Bell Building.
“I respectfully ask that you postpone this hearing which will leave me out of the probate process that was set in place that had me listed in my grandfather’s will. This hearing would aid in helping the parties commit a fraud against my grandfather’s wishes and the laws of the State of Alabama.
“... Please enter this letter as a part of the proceedings of the land issue at hand for future legal proceedings that will take place to right this wrong.”
After filing the foregoing letter, Hardin filed a petition in the Montgomery Probate Court seeking the admission to probate of a document purported to be Carter’s will; Hardin amended his petition on several occasions, the last time on November 28, 2012. The petition alleged that Hardy’s *625 petition for letters of administration “falsely represented” to the probate court that Carter had died without a will. Hardin requested that the probate court admit Carter’s purported will to probate and that the court appoint him as personal representative of Carter’s estate, even though the will names Gloria Jean Carter (“Gloria”) as personal representative of Carter’s estate and Cheryl Denise Carter, Gloria’s daughter, as successor personal representative.
We note that the will offered as Carter’s is in the form of a self-proving will and was apparently executed on March 31, 1999. As to the disposition of Carter’s real property, the will provides:
“I give, devise, and bequeath a fee simple title to all of my real property to my daughter, Gloria Jean Carter, my granddaughter, Cheryl Denise Carter, and to my grandson, Julius Lamont Hardin in equal shares to share and share alike.
“I give, devise, and bequeath a life estate in my real property to my- son, Julius Carter, Jr.[,] to my daughter, Emma Lee Hardy, Luther Carter, to my son, Cleavon Carter, to my daughter, Thelma C. Malone, and to my daughter, Deloris Ann Carter [Johnson], for use during their lives, without rent, liability for waste, or bond, but subject to the payment of taxes and insurance premiums. Said life estate shall not establish an entitlement and/or right to cut and/or sell timber on the land. No timber shall be sold on any land without the approval of Gloria Jean Carter, Cheryl Denise Carter, and Julius Lamont Hardin.”
Hardy filed a will contest challenging Hardin’s admission of the purported will to probate. Hardy alleged that she “had no knowledge regarding the purported” will when she filed her petition for letters of administration
“and that the Petition to Probate the purported Last Will and Testament of Julius Carter, Sr., Deceased is due to be dismissed based on the Statute of Limitations set forth in the Code of Alabama § 43-8-161 which states that ‘[wjills shall not be effective unless filed for probate within five years from the date of the death of the testator.’ ”
On May 14, 2013, the probate court conducted an ore tenus proceeding in Hardy’s will contest. During the proceeding, Hardin argued that the limitations period described in § 43-8-161, Ala.Code 1976, was not controlling because, he contended, Gloria and Hardy had committed fraud. Hardin directed the probate court’s attention to § 43-8-5, Ala.Code 1975, which states:
‘Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within one year after the discovery of the fraud or from the time when the fraud should have been discovered, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud.”
On May 23, 2013, the probate court entered an order in favor of Hardy and against Hardin on Hardy’s claim that the will should not be admitted to probate. In the order, the probate court specifically concluded that the will was not timely filed for probate under § 43-8-161, Ala.Code 1975. The May 2013 order further states:
“2. ... Hardin, failed to prove the requisite fraud to the Court on the part *626 of either the Contestant, .,. Hardy or by Gloria Jean Carter, an heir possessing the purported Last Will and Testament, which is required to toll the statute of limitations pursuant to the law. Russell v. Maxwell, 387 So.2d 156 (Ala.1980).
“3. ... Hardin, not only knew that Gloria Jean Carter had possession of the purported Will of Julius Carter, Sr., deceased, but also testified in open Court that he had given her financial assistance to file said Will in the Probate Court. Gloria Jean Carter testified in open Court that after the death of said decedent, that she had possession of the original Will but never filed it for probate. Pursuant to Code of Alabama, 1975, § 43-8-270, ‘After the death of a testator and on request of an interested person, any person having custody of a will of the testator shall deliver it with reasonable promptness to a person able to secure its probate and if none is known, to an appropriate court,’ [Hardin] knew that Gloria Jean Carter had possession of the original purported Will of said decedent, but failed to file a Motion to Compel Will to be filed with the Probate Court to force the production of the purported Will to the person that had custody of the original will and could have done so anytime within the five year statute of limitations.”
On July 3, 2013, Hardin filed a notice of appeal in the probate court, appealing the probate court’s decision to the Montgomery Circuit Court. See Ala.Code 1975, § 12-22-20 (“An appeal lies to the circuit court or Supreme Court from any final decree of the probate court, or from any final judgment, order or decree of the probate judge_”); Ala.Code 1975, § 12-22-21 (“Appeal from the order, judgment or decree of the probate court may be taken by the party aggrieved to the circuit court or Supreme Court in the cases hereinafter specified.... Appeal to the circuit court in such cases shall be within the time hereinafter specified: (1) From the decree, judgment or order on a contest as to the validity of a will, to be taken within 42 days after the determination of the contest .... ”).[3]
On July 23, 2013, Hardin filed a notice in the circuit court reflecting that he had requested a trial transcript of the May 14, 2013, probate court proceedings. Thereaf *627 ter, Hardin and Hardy filed briefs directed to Hardin’s appeal of the May 2013 order. In his brief, Hardin argued that his petition to probate Carter’s purported will was timely filed because, he said, Hardy had committed fraud on the court, thus tolling the pertinent limitations period under § 43-8-5, Ala.Code 1975. Hardin also argued that he had no legal duty to compel Gloria to file the will for probate pursuant to § 43-8-270, Ala.Code 1975.[4] Hardin’s brief to the circuit court contains the following summary of pertinent facts:
“At the time of Mr. Carter’s death the will was in effect and his heirs, both children and grandchildren, knew of the will. Shortly after Mr. Carter’s death, [Hardin] approached the named Executrix, Gloria Carter, several times asking her to probate the will. Gloria Carter attempted to probate the will and specifically told [Hardin] she would probate the will. She drafted letters of waiver to all her siblings and mailed it to each of them in 2004. Gloria Carter also asked [Hardin] for money, which he gave her, to prepare documents to probate the will. Gloria, Carter’s siblings refused to cooperate and she could not financially afford to probate the will. The siblings specifically ‘did not want to go along with the will.’
“Subsequent to Ms. Carter’s unwillingness to allow the will to probate, Gloria Carter and [Hardin] had several conversations. Gloria Carter testified that at that time [Hardin] merely knew that the process ‘was [at] a standstill ... because [Ms. Carter’s] family, my sisters and my brothers were not cooperating.’ Gloria Carter never told [Hardin] she was not going to probate the will[;] instead she [led Hardin] to believe she would. In 2004, [Hardin] also asked for copies of the will, but Gloria Carter purposely refused to give him a copy.
“Despite [Hardin’s] well-founded belief that Gloria Carter would probate the will, [Hardin’s] aunt, Emma Hardy[,] petitioned the probate, court for ‘Letters of Administration’ on December 16, 2009.... Despite direct testimony from Gloria Carter that she had mailed Emma Hardy a waiver regarding the will and despite numerous conversations amongst the siblings, Ms. Hardy swore before the Probate Court in her petition that she was not aware of a will when she filed the intestacy action.
“At that time, [Hardin] was led to believe the will was being probated. It was not until December of 2011 that he learned the truth.”
(References to transcript of probate court hearing omitted.)
On February 21, 2014, the circuit court entered an order referencing § 43-8-5 and stating:
“The evidence is clear that the proposed executrix, Gloria Carter, told [Hardin] unequivocally she would probate the will. Gloria Carter even accepted money from [Hardin] to probate the will. Whether Gloria Carter truly meant to probate the will, the testimony at trial is that Gloria Carter started the process and sought waivers from her siblings. Her siblings, with full knowledge of the will, refused to sign the *628 waivers and convinced Gloria Carter to not probate the will. Despite changing course, Gloria Carter never told [Hardin] she would not probate the will and led him to believe she would.
“The Alabama Supreme Court addressed a similar issue in Burch v. Burgess, 521 So.2d 921 (Ala.1988), where a son failed to contest the probate of his mother’s will because the executrix and sole beneficiary told the son the mother had died without assets and that he need not go to the probate court. The court held that the son’s filing of a fraud claim within one year after discovering the concealment of the value of his mother’s estate was a timely filing. Id. at 923. The Burch court held:
“ ‘Burgess alleged that Burch’s fraudulent misrepresentation that his mother’s estate was without assets prevented him from contesting the probate of his mother’s will. Burgess’s filing of his fraud claim against Burch within one year after discovering Burch’s concealment of the value of his mother’s estate was a timely filing. Further, in light of the evidence before it, the jury could have inferred that Burgess reasonably relied upon the misrepresentations of Burch; thus, the jury could have found, as a fact, that Burgess was caused to forgo the filing of a contest of his mother’s will.’

“Id.

“Similar to Burch, [Hardin] was told the will would be probated over numerous conversations. [Hardin] was unaware that Gloria Carter and her siblings had conspired to suppress the will from the probate court’s knowledge. This action attempted to deprive [Hardin] of his rightful ownership interest in Mr. Carter’s real property. The representations of Gloria Carter caused [Hardin] to forgo the filing of any action in the probate court.
“In furtherance of the fraud, Emma Hardy sought to administer Mr. Carter’s estate as if he had died intestate. Gloria Carter testified she mailed probate documents to Emma Hardy and testimony from several witnesses revealed the whole family knew of the existence of Mr. Carter’s will. Despite this, Ms. Hardy swore in her Petition for Letters of Administration with the Montgomery County Probate Court that Mr. Carter died leaving no Last Will and Testament; so far as [she] knows or believes.
“The record below reveals a fraud rising to the level of a fraud upon the court, by both Gloria Carter and Emma Hardy. The actions of these two parties and the suppression of information from [Hardin] were made to induce him to forgo legal action to probate the decedent’s will.
“Based on the foregoing, this Court finds the Order of the Probate Court contrary to Alabama law, whether based on an ore tenus standard or whether, as is correct here, giving no deference to the Probate Court.”
(References to transcript omitted; emphasis added.) The circuit court’s order further stated that the probate court had erred as to its application of § 43-8-270, stating: “[T]his Code provision relates to the duty of a custodian of a will which [Hardin] was not. The record makes clear that Gloria Jean Carter was the custodian of the Will after Mr. Carter’s death and that [Hardin] never held the original or a copy of the will.” The circuit court reversed the probate court’s May 2013 order and rendered a judgment in favor of Hardin and against Hardy as to Hardy’s will contest.
*629 Hardy appeals. See Ala.Code 1975, § 12-22-22 (“An appeal to the Supreme Court may be taken from the judgment of the circuit court on an appeal brought to such court under the provisions of this division.”).

Standard of Review

The circuit court was sitting as an appellate court in this case and was bound by the ore tenus rule. The ore tenus rule required the circuit court to defer to the probate court’s factual determinations where evidence supported those determinations. Specifically, where evidence is presented ore tenus, the findings of the trial court are presumed correct “and will not be disturbed on appeal absent a showing of plain and palpable error.” Pilalas v. Baldwin Cnty. Sav. & Loan Ass’n, 549 So.2d 92, 95 (Ala.1989); see also Williams v. Thornton, 274 Ala. 143, 144, 145 So.2d 828, 829 (1962) (“The finding of the Probate Court based on the examination of witnesses ore tenus is presumed to be correct, and will not be disturbed by this court or the Circuit Court unless palpably erroneous.”).
As this Court stated in Yeager v. Lucy, 998 So.2d 460 (Ala.2008):
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995).’ ”
998 So.2d at 463 (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000)); see also, e.g., Woods v. Woods, 653 So.2d 312, 314 (Ala.Civ.App.1994) (“[I]n determining the weight to be accorded to the testimony of any witness, the trial court may consider the demeanor of the witness and the -witness’s apparent candor or evasiveness.... It is not the province of this court to override the trial court’s observations.”). “Under the are tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.” Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). However, “[t]he ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.” Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005).

Analysis

, Hardy argues that the circuit court failed to give proper deference to the probate court’s factual determinations and that it erred as a matter of law as to its rulings concerning the application of § 43-8-161 (five-year limitations period for filing will for probate), § 43-8-5 (tolling of limitations period for fraud), and § 43-8-270 (requiring person in possession of will to deliver it promptly for probate). We agree.
Section 43-8-161 states that “[w]ills shall not be effective unless filed for probate within five years from the date of the death of the testator.” See also Caverno v. Webb, 239 Ala. 671, 674, 196 So. 723, 724 (1940) (“A will is ineffective until duly probated. No court can take notice of .or give effect to a will until probated in the court of probate, having general and exclusive jurisdiction for such purpose.”). This Court has held that § 43-8-161 is a statute of limitations. See, e.g., Hollis v. Wallace, 481 So.2d 875, 877 (Ala.1985). In Fuller v. Qualls, 241 Ala. 673, 4 So.2d 418 (1941), this Court discussed the predecessor to § 43-8-161, noting that the language of *630 the statute “is intended to cut off the remedy. Wills not probated are ineffica-cious to pass title or confer rights.” 241 Ala. at 674, 4 So.2d at 419; see also Davis v. Townsend, 435 So.2d 1280, 1282 (Ala.1983) (“Bama Townsend’s will was not filed for probate within the requisite statutory period, and, therefore, cannot be effective.”).
As for the present dispute concerning Carter’s purported will, we note that Hardin testified that Carter “pretty much raised me when I was a little boy” and that Hardin was close to Carter in Carter’s later years. Hardin stated that in 1999 Carter telephoned him about the purported will. Hardin stated:
“He told me he had made his will. And I said, why did you wait so long to make it. He told me, he said, I wasn’t ready yet. So I said okay. He was just telling me about his kids. He said that they wouldn’t do the right thing with the land. He said-he’d rather leave it to me.”
Hardin testified that he knew that Carter’s purported will left an interest in the land to him.
After Carter’s death, Hardin had numerous conversations with Gloria about probating the will. For example, Hardin testified that in 2004 he asked Gloria “about her probating the will.” Hardin admitted that he was aware at that time that a petition to probate the will had been prepared but had not been filed. And, through 2011, Hardin continued to have conversations with Gloria about her probating the will. Hardin further acknowledged that “in 2009” he was aware that Hardy had petitioned for letters of administration as to Carter’s estate and that Hardy “was trying to administer” Carter’s estate.
It is undisputed that Carter’s will was not filed for probate within five years of Carter’s death on December 23, 2002, as required by § 43-8-161. Despite Hardin’s assertions that he was ignorant of the law that required the will to be filed for probate within five years of Carter’s death, Hardin, like, all citizens, is presumed to know the law. See, e.g., Rice v. Tuscaloosa Cnty., 242 Ala. 62, 68, 4 So.2d 497, 501 (1941) (“ ‘[A]ll men are conclusively presumed to know the law’, without which ‘legal accountability could not be enforced, and judicial administration would be embarrassed at every step.’ ” (quoting Hemphill v. Moody, 64 Ala. 468, 473 (1879))); and Goodman & Mitchell v. Walker, 30 Ala. 482, 495 (1857) (“For the common accountabilities of life, all men, even these of the lowest degree of legal sanity, are presumed to know the law.”). In other words, Hardin is charged with knowledge that Carter’s will had to be filed for probate on or before December 23, 2007, in order to be effective. And, though Hardin was aware that that had not been done at least as of 2009, he waited until January 2012, when a petition for final settlement was scheduled to be heard, to file anything with the probate court to notify that court about the existence of the purported will.
In addition, based on the testimony received by the probate court, that court was free to conclude that Hardin could not reasonably have relied upon any representation of Gloria as to the probate of the will after December 23, 2007, five years after Carter’s death.[5] Though Hardin had no duty under § 43-8-270 to petition the probate court to require Gloria to timely file the will for probate or to deliver the *631 will to the probate court so that the will could be timely admitted to probate, Hardin had the right to do so, as the probate court correctly noted. And, as with the limitations period itself, Hardin is presumed to have been aware that he had such a right.
Nevertheless, the circuit court concluded that the five-year limitations period was tolled based on the application of § 43-8-5, Ala.Code 1975, which states:
“Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced'within one year after the discovery of the fraud or from the time when the fraud should have been discovered, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud.”
(Emphasis added.) In reaching its conclusion, however, the circuit court did not defer to the factual findings of the probate court.
As the' commentary to § 43-8-5 states:
“The time of ‘discovery’ of a fraud is a fact question to be determined in the individual case. In some situations persons may not actually know that a fraud has been perpetrated but have such strong suspicion and evidence that a court may conclude there has been a discovery of the fraud at that stage. On the other hand there is no duty to exercise reasonable care to discover fraud; the burden should not be on the heirs and devisees to check on the honesty of the other interested persons or the fiduciary.”
(Emphasis added.) •
Hardin failed to convince the probate court, which actually heard the witnesses’ testimony and observed the witnesses’ demeanor — particularly that of Hardin, Hardy, and Gloria — as to “the requisite fraud” on the parts of Gloria, who perhaps had misled Hardin as to whether she would timely file the will for probate, and of Hardy, who testified that she was unaware that the purported will existed until January -2012, more than two years after she had alleged (in the December 2009 petition for letters of administration) that, to her knowledge, Carter had died intestate.[6] And the probate court received testimony from which it might have concluded that Hardin discovered any “fraud” more than one year before he filed anything with the probate court regarding Carter’s purported will.
*632 Further, as this Court noted in Christian v. Murray, 915 So.2d 28 (Ala.2005), the fraud required for tolling to apply under § 43-8-5 “must be that kind of fraud that would allow relief for ‘fraud on a court/ ” which this Court has defined as “ ‘that species of fraud that defiles or attempts to defile the court itself or that is a fraud perpetrated by an officer of the court, and it does not include fraud among the parties, without more.’ ” 915 So.2d at 28 (quoting Waters v. Jolly, 582 So.2d 1048, 1055 (Ala.1991)).[7] In Christian, Am-south Bank was appointed as personal representative of an estate pursuant to a will dated May 1988; the May 1988 will was admitted to probate in March 2002. In November 2002, after the time for filing a will contest as to the May 1988 will had passed, a beneficiary of the estate discovered a will dated August 1988 and a codicil to that will dated June 1996 in a trunk of the decedent’s that had been in AmSouth’s possession. There was no evidence indicating that AmSouth had had actual knowledge of the existence of the August 1988 will and the June 1996 codicil before the beneficiary discovered those documents.
After the proceedings in Christian were removed from the probate court to the circuit court, the circuit court entered an order “setting aside the probate court’s order admitting the May [1988] will to probate” because it concluded that the time in which to file a will contest had been tolled by AmSouth’s “innocent fraud.” 915 So.2d at 25. This Court reversed the circuit court’s judgment and noted the following as to the meaning and application of § 43-8-5:
“Section § 43-8-5 has been discussed in only two cases, both of which were decided by the Court of Civil Appeals .... The facts of both of these cases involved intentional fraud; neither case addresses whether § 43-8-5 contemplates a tolling of the time for filing a will contest on the basis of more innocent conduct.
[[Image here]]
“Although Alabama does recognize a cause of action for innocent fraud, there is no indication in the Probate Code that innocent fraud will toll the time for filing a will contest. Section 43-8-5 was enacted in 1982, and it adopts § 1-106 of the Uniform Probate Code. The Commentary following § 43-8-5 is substantially identical to the Commentary following § 1-106 of the Uniform Probate Code. However, a significant addition *633 appears in the Commentary following § 43-8-5: ‘The usual rules for securing relief for fraud on a court would govern, however.’ We conclude that the Legislature intended that the fraud necessary to toll the time for filing a will contest must be that kind of fraud that would allow relief for ‘fraud on a court.’
“ ‘This Court has defined “fraud upon the court” as that species of fraud that defiles or attempts to defile the court itself or that is a fraud perpetrated by an officer of the court, and it does not include fraud among the parties, without more.’ Waters v. Jolly, 582 So.2d 1048, 1055 (Ala.1991) (citing Brown v. Kingsberry Mortgage Co., 349 So.2d 564 (Ala.1977), and Spindlow v. Spindlow, 512 So.2d 918 (Ala.Civ.App.1987)). Black’s Law Dictionary 686 (8th ed.2004) defines ‘fraud on the court’ as follows: ‘In a judicial proceeding, a lawyer’s or party’s misconduct so serious that it undermines or is intended to undermine the integrity of the proceeding.’ See Ex parte Free, 910 So.2d 753 (Ala.2005). The cases in which fraud on the court has been found, for the most part, have been cases in which there was ‘the most egregious conduct involving a corruption of the judicial process itself,’ such as the bribery of a judge or the employment of counsel to improperly influence the court. 11 Charles A. Wright et al., Federal Practice & Procedure Civ.2d § 2870 (1995).
[[Image here]]
“AmSouth’s conduct does not fit within the definition of fraud on the court. The facts to which the parties have stipulated indicate that AmSouth had no intent to defile the probate court or to corrupt the judicial process. As the trial court noted in its order, AmSouth was obligated to submit the May will, the only will of which it was aware, to the probate court, pursuant to Ala.Code 1975, § 43-8-270.”
915 So.2d at 27-29 (footnote omitted). See also Ex parte Floyd, 105 So.3d 1193, 1198 (Ala.2012).[8]
We note that Gloria did not file a petition requesting that the probate court administer Carter’s estate or that it address the validity of Carter’s purported will. Thus she did not misrepresent anything to the probate court. See also note 5, supra. As to Hardy, the probate court rejected the contention that she had intended to mislead the court in a material way when she filed her petition for letters of administration in December 2009.[9] Accordingly, the probate court’s conclusions that Hardin had “failed to prove the requisite fraud to the Court” and had failed to timely raise that issue as required by § 43-8-5 are supported by the evidence. The circuit *634 court erred to reversal by concluding otherwise.
Based on the foregoing, the circuit court’s order reversing the probate court’s order and rendering a judgment in favor of Hardin is reversed and this cause is remanded to the circuit court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and BOLIN, MAIN, and BRYAN, JJ., concur.

. Cleveland Carter died on December 13, 2011. He was survived by three children: Ernestine Wigfall, Alvin Wigfall, and Nathaniel Wigfall.

. Following Cleveland Carter’s death on December 13, 2011, Hardy filed a motion to continue the final-settlement hearing pending the appointment of a personal representative for Cleveland Carter's estate. The probate court granted Hardy’s motion to continue the final-settlement hearing.

. Referenced in and attached to the notice of appeal was an "Appeal and Notice of Removal of Matter 09-00851 from the Probate Court of Montgomery County, Alabama and Demand for Trial by Struck Jury” ("the Notice and Demand”). Montgomery Probate Court case no. 09-00851 is the administration of Carter's estate.
In the Notice and Demand, Hardin alleged that he "reasserts and adopts as if fully included herein, all claims made in his First Amended Petition ...; Appellant Julius Hardin also adopts all previous pleadings made at the Probate Court level.” Hardin sought a “de novo appeal” as to the will contest, and he requested that the "case be tried by a struck jury.” Further, Hardin requested that the circuit court “order that Letters Testamentary issue forthwith to him." Hardin later dropped his demand for a jury trial.
We note that the Notice and Demand does not comply with the statutory requirements for the removal of the administration of an estate from the probate court to the circuit court and that the record contains no order reflecting the removal of the administration of Carter’s estate from the probate court to the Montgomery Circuit Court. See Ala.Code 1975, § 12-11-41. Also, the Notice and Demand purports to have been filed pursuant to Rule 4, Ala. R.App. P., and § 12-22-2, Ala. Code 1975, which .states: “From any final judgment of the circuit court or probate court, an appeal lies to the appropriate appellate court as a matter of right by either party, or their personal representatives, within the time and in the manner prescribed by the Alabama Rules of Appellate Procedure,”

. Section 43-8-270 states:
"After the,death of a testator and on request of an interested person, any person having custody of a will of the testator shall deliver it with reasonable promptness to a person able to secure its probate and if none is known, to an appropriate court. Any person who wilfully fails to deliver a will is liable to any person aggrieved for,the damages which may be sustained by the failure. Any person who wilfully refuses or fails to deliver a will after being ordered by the court in a proceeding brought for the purpose of compelling delivery is subject to the penalty for contempt of court.”

. Based on the record before us, Hardin did not file a fraud action against Gloria (or any persons who might have conspired with her) seeking damages for any harm he may have suffered in reliance upon her representations that she would probate the will.

. As noted above, in Hardy's petition for letters of administration, she alleged that Carter died “leaving no Last Will and Testament, so far as [Hardy] knows or believes.” Gloria testified that she had mailed information about the will and her desire to probate the will to Hardy in 2004, but Gloria also testified that she did not know whether Hardy re- ' ceived the information, and Hardy testified that she had not received the information. Although- the probate court was free to disbelieve Hardy’s testimony as to her lack of knowledge about Carter's purported will, the court instead believed her testimony. See Sullivan v. Eastern Health Sys., Inc., 953 So.2d 355, 360 (Ala.2006) (“ '[A] letter properly addressed, stamped, and mailed is presumed to have been received in due course. Evidence denying the receipt of the letter does not render the evidence of the mailing inadmissible. Neither is it conclusive. Whether it was so mailed and received becomes a jury question.’" (quoting Corinth Bank & Trust Co. v. Cochran, 219 Ala. 81, 83, 121 So. 66, 67 (1929) (emphasis added))).

. Based on the findings of the probate court that are supported by testimony that court received, the present case is distinguishable from Burch v. Burgess, 521 So.2d 921 (Ala.1988), which the circuit court discussed in its order, because Hardin was aware that Carter’s estate contained property and that the will devised him an interest in that property. Also, unlike Fuller v. Qualls, 241 Ala. 673, 4 So.2d 418 (1941), and Vandegrift v. Lagrone, 477 So.2d 292 (Ala.1985), the present case does not involve fraud as to the existence of a will that favored the defrauded party; Hardin was aware of the existence of Carter's will. Cf. Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149 (1940) ("While [the tolling] statute is usually applicable to cases wherein fraud is the basis of the cause of action, it is the settled construction that its purpose is to make available at law the rule theretofore prevailing in equity; and applies to a fraudulent concealment of the existence of a cause of action from the party in whose favor the cause of action exists."). There was testimony to support the conclusions that Hardin was aware that Carter’s purported will existed, that Hardin was aware that he was a beneficiary under Carter’s purported will, and that Carter’s purported will was in Gloria’s possession. And Hardin is presumed to know when the will was required to be filed for probate pursuant to § 43-8-161 and to know that he could compel Gloria to probate the will or to deliver the will to the probate court pursuant to § 43-8-270.

. We note that, before the enactment of § 43-8-5, the general fraud-tolling provision set forth in § 6-3-2, Ala.Code 1975, was applicable to fraud committed in connection with an estate administration. See, e.g., Russell v. Maxwell, 387 So.2d 156 (Ala.1980). See also Commentary to § 43-8-5 (noting that that section "is an overriding provision that provides an exception to the procedures and limitations provided ... otherwise in the Code of Alabama”).

. As to the state of Hardy’s knowledge regarding the existence of Carter’s will, her testimony conflicts with any inference that she was in attendance at "family” meetings concerning the will in 2004. In Hardin’s appellate brief, he characterizes Hardy’s testimony as “self serving” and "uncorroborated.” But it is the role of the fact-finder — in this case the probate court — to assess credibility and to resolve conflicts in the evidence. See, e.g., Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). The probate court apparently believed Hardy's testimony, and, on appeal, the circuit court was not at liberty to reject that credibility determination and make its own independent credibility determination as to Hardy’s testimony.